## A & J BUILDERS INC. v.
## OLIVER HARMS AND OTHERS.

179 N. W. (2d) 98.

July 31, 1970—No. 41727.

*Jerome Daly,* for appellant.

*Seltz & Tolaas* and *Douglas R. Seltz,* for respondents Oliver Harms, Lutheran Church-Missouri Synod, Minnesota South District of Missouri Synod Lutheran Church, Concordia College, Providence Church Plan, Inc., Joseph Webb, Martin W. Lieske, Edward J. Mahnke, August Hauptmann, Howard E. Pleuss, Howard Burgdorf, R.K.B. Studios, Douglas R. Seltz, and Concordia Publishing House.

*Hyman Edelman,* for respondents Ridge Lutheran Home, Inc., Oscar J. Husby, Emma Steffens, and United States Fidelity & Guaranty Company.

*Meagher, Geer, Markham & Anderson, Robert M. Frisbee, O. C. Adamson II,* and *Hyman Edelman,* for respondents Hyman Edelman, Samuel H. Maslon, Sheldon Kaplan, Marvin Borman, Irving R. Brand, John C. McNulty, Samuel L. Kaplan, Ralph

Strangis, Stephen B. Swartz, Harvey F. Kaplan, James B. Druck, Ronald G. Vantine, and Richard A. Shors.

*Murnane, Murnane, Battis & deLambert* and *John R. deLambert,* for respondent First National Bank of Hudson.

*Faegre & Benson, Gordon G. Busdicker,* and *Peter R. Kitchak,* for respondent Eugene Linse.

Heard before Nelson, Murphy, Sheran, Peterson, and Frank T. Gallagher, JJ.

MURPHY, JUSTICE.

This is an appeal from summary judgments entered in favor of 33 defendants in an action alleging conspiracy to interfere with contractual relations.[1] Plaintiff claims damages against defendants in the sum of $6 million. The complaint alleges that the action is one based "upon an unlawful interference with Contract relations, fraud, breach of Contract nuisance and deprivation of rights secured by the Declaration of Independence and the Constitution of the United States and all laws passed pursuant thereto including negligence in the selection, management and control of its agents."

The action is brought by A & J Builders Inc., the stock of which is wholly owned by one Carl R. Anderson and Mary Anderson, his wife. The subject of the contract with which defendants allegedly interfered is certain Dakota County real estate which was originally acquired by Anderson's associate, Julian Vinge, in 1953 for $15,000. On February 21, 1963, it was acquired by plaintiff under a contract for deed for the price of $160,000.

From the incomplete and unsatisfactory record presented by plaintiff, it would appear that, on February 21, 1962, Anderson and Vinge organized A & J Builders Inc., for the purpose of entering into the construction business, as well as for the develop-

---

[1] The appeal against defendant Harold Schweigert was dismissed because it had not been taken within the time required by Rule 104.01, Rules of Civil Appellate Procedure.

ment of the tract of land acquired by Vinge in 1953, 152 acres of which he thereafter transferred to the corporation. Part of the land was to be utilized in the construction of a nursing home for the elderly. In furtherance of this project, Anderson, Luther C. Gronseth, and Eugene W. Linse, on January 22, 1965, incorporated Ridge Lutheran Home, Inc., as a Minnesota nonprofit corporation. This corporation, which is one of the principal defendants, will be hereafter referred to as "Ridge Lutheran." In addition to the three incorporators, other directors were Vinge, Howard E. Pleuss, Howard A. Burgdorf, and August L. Hauptmann, all of whom, except Vinge, are named as defendants. Anderson served as president of Ridge Lutheran from January 22, 1965, until his resignation on August 26, 1967. He was its executive secretary from March 5, 1965, until August 26, 1967. In the latter capacity, he was the sole executive authorized to withdraw and disburse the corporate funds.

These corporate funds came from the sale of building development bonds to the general public. Ridge Lutheran enlisted the services of Providence Church Plan, Inc., of Atlanta, Georgia, a securities dealer, in order to promote the sale of these bonds. The arrangement with Providence Church Plan, Inc., was shortly terminated, after which Ridge Lutheran continued its solicitation and sale of bonds. Although Ridge Lutheran had no connection with any denomination of the Lutheran Church, either officially or tacitly, it used church-related publications, including *Lutheran Layman* and *Lutheran Reporter,* to advertise the sale of these bonds. From early 1965 until September 1967, Ridge Lutheran realized $1,645,000 from the sale of bonds to some 600 bondholders throughout the country.

It appears that part of the proceeds from the sale of bonds was used by plaintiff to pay Vinge for the purchase of the Dakota County tract. In addition, part of the proceeds of the bonds was used to purchase heavy construction equipment for plaintiff. On April 26, 1966, Ridge Lutheran agreed to purchase 130 acres of the land in question from plaintiff for $910,000 or $7,000 per

acre. This was a part of the tract which plaintiff acquired from Vinge in 1963 for $160,000. Anderson signed the contract as president of both A & J Builders Inc. and Ridge Lutheran. It provided that $500,000 was to be paid to plaintiff on or before December 30, 1967; that plaintiff retained the right to sell and remove dirt, sand, and gravel; that plaintiff would receive any funds arising from condemnation proceedings; and that it would serve as contractor for the construction of a nursing home facility on a cost-plus-10-percent basis. The special burden of the complaint is that defendants interfered with plaintiff's contractual rights under this contract.

Construction on the project began in June 1966 and continued until September 1967, at which time the building was approximately 80 percent completed. It would appear that during this period corporate accounting procedures were disregarded and Anderson used the proceeds of the bonds as if they were his own. He drew checks on Ridge Lutheran payable to himself and deposited the proceeds in his personal bank accounts. As construction costs became due, he drew checks to A & J Builders Inc., which, in turn, satisfied creditors. Checks totaling more than $1 million were drawn on Ridge Lutheran and deposited in Anderson's account. Included in the disbursements was $500,000 to plaintiff to apply on land purchases. No accounting was ever rendered to Ridge Lutheran concerning any of these expenditures.

In June 1965, defendants August Hauptmann and Howard Pleuss resigned their positions as directors of Ridge Lutheran. In July 1966 defendant Howard Burgdorf resigned. They were not replaced. In the summer of 1967, there were insufficient funds to pay construction costs for work already performed on the project, and subcontractors refused to continue the work until past accounts were settled. Anderson resigned from Ridge Lutheran on August 26, 1967, and Vinge followed suit on August 30, 1967. At this time the financial affairs of Ridge Lutheran had deteriorated to the point where it owed an interest payment

of approximately $50,000 on September 1, 1967, and had only $1,000 available for the payment. Anderson's policy had been to make current interest payments from proceeds derived from the sale of additional bonds. On September 1, 1967, Gronseth and Linse, the two remaining directors of Ridge Lutheran, elected themselves president and secretary, respectively. On September 8, 1967, Ridge Lutheran and Linse, having retained counsel, applied for a temporary injunction in the District Court of Dakota County in an action against Anderson, Vinge, and A & J Builders Inc., to conserve the assets for the benefit of Ridge Lutheran and its creditors. A hearing upon the application was held September 21, 1967. In connection with this proceeding, Anderson filed an affidavit in which he stated:

(a) He had no objection to an accounting by the court as to all records and transactions relating to Ridge and Anderson and A & J.

(b) He had no intention of selling the subject real estate to anyone other than Ridge and, upon payment of just compensation or satisfactory financing, Anderson as president of A & J would transfer said property to Ridge.

(c) Anderson and A & J had suspended work on the building because of other proceedings (pending mechanics lien foreclosure action) in the lower court relating to a plumber's subcontract and also because of Anderson's inability to obtain the services of necessary steamfitters to continue construction of the nursing home.

(d) Upon being furnished proof of financial capability of Ridge, Anderson and A & J would complete construction of the structure.

At that hearing, plaintiff's counsel stated, "We do not object to an order of the Court that the property not be sold to anyone else * * *." The district court granted the following temporary injunction:

"That Defendants Carl R. Anderson and A & J Builders, Inc.,

their agents, servants and employees and all persons acting in concert with them, are hereby enjoined and restrained during the pendency of this action and until the further order of this Court from in any manner enforcing or attempting to enforce the land purchase agreement between them or any of them and Ridge Lutheran Home, Inc. by termination notice, foreclosure or otherwise, and from in any manner terminating or attempting to terminate the construction contract between defendants or any of them and Ridge Lutheran Home, Inc., and from in any manner changing or attempting to change the status quo existing between defendants or any of them and Ridge Lutheran Home, Inc. in respect of the said land purchase agreement and construction contract."

It is apparent that the injunction was designed to protect the rights of creditors, including purchasers of the bonds, by preventing plaintiff from cancelling the contract of purchase of the land to Ridge and otherwise depleting assets acquired from the proceeds of the bonds.

On September 11, 1967, plaintiff amended its complaint to include two bondholders, Caroline F. Siebert and Emma Steffens, as additional defendants.

At the hearing in the district court on October 23, 1967, on Linse's application for appointment of a receiver for Ridge Lutheran, counsel for plaintiff stated:

"Speaking in behalf of Carl Anderson, individually, and in behalf of A & J Builders, we have no objection to the appointment of a receiver on behalf of Ridge Lutheran Home. Based upon the resignation on or about August 23, 1967, we take that position, and therefore we are not a part of the corporation at this time."

The court appointed Oscar Husby as receiver.

Plaintiff commenced this action on April 10, 1968, against 37 defendants, including Concordia College; the Minnesota South District of the Lutheran Church—Missouri Synod; the Lutheran Church—Missouri Synod; former board members Pleuss, Haupt-

mann, and Burgdorf; and 13 members of the law firm of Maslon, Kaplan, Edelman, Borman, Brand & McNulty. In a scurrilous complaint, plaintiff contends, in 12 pages of rambling invective, that defendants have conspired to interfere with its contractual relationship with Ridge Lutheran. The complaint alleges:

"That the Defendant Missouri Synod and the Minnesota South District of the Lutheran Church—Missouri Synod are set up and created and existing under the pretense that they are non-profit religious charitable organizations whereas in truth and in fact they are set up and maintained for purposes of plunder, gain and profit to themselves their Heads, Reverends, Doctors and Ministers and Professors.

"That the Defendant Concordia Publishing House of St. Louis, Mo. is the publisher of a paper named 'The Lutheran Witness Reporter', which newspaper is an agent for and is under the management, direction and control of the Defendant Lutheran Church—Missouri Synod of St. Louis, Mo.

"Using as a tool, fear, threats, fraud and extortion, these Lutheran Churches and their organizations, contrary to the Thirteenth Amendment to the Constitution of the United States, maintain themselves as humane inventions, arrogating attributes of Deity to themselves for the purpose of terrifying the human race to the condition of being thralls, servants and slaves to monopolize power and profit to themselves contrary to the express terms of the Declaration of Independence and the Constitution of the United States.

"That by their plan and design Defendants, their agents and servants have subjected Plaintiff to their wrongful and unlawful activity to Plaintiff's damage as is hereinafter alleged.

"That after said Ridge Lutheran Home Inc. was started and after Plaintiff attempted to carry out its contract, express or implied and before and after the construction of a nursing facility building was started on Plaintiff's property by Plaintiff the Defendants, their agents and servants, entered into a long train

of abuses, injuries, ultra vires acts, fraudulent conduct, unlawful acts and usurpations evincing a plan and design to reduce Plaintiff and its Board of Directors under absolute despotism and tyranny for purposes of causing a breach and interference of Plaintiff's Contract and theft of Plaintiff's personal and real property.

"That on and before January 1, 1968 the Defendant Ridge Lutheran Home Inc. while under the management, direction and control of other Defendants named and their agents and servants caused the contract heretofore referred to to be breached to Plaintiff's damage in the sum of $6,000,000.00."

Most of the defendants moved for summary judgment and, at the hearing thereon, the court was presented with affidavits of the defendants or their officers, or employees, each containing evidentiary support for the motion. In addition, the court had an extensive deposition of Anderson; a copy of the United States grand jury indictment of Anderson, Vinge, and Gronseth; and the files and proceedings of the action involving the temporary injunction and the appointment of a receiver. After fully hearing the matter, the court granted the motions for summary judgment.

From a sifting of the facts, certain significant circumstances surface on the record before us. Ridge Lutheran bonds in the total amount of $1,645,000 have been sold to the public. Ridge Lutheran is insolvent; interest has not been paid on the bonds; and the purpose of the legal proceedings instituted against plaintiff is to salvage for the creditors such assets as may be remaining.

The property interests to which the bondholders and creditors might look to protect their rights were exposed to loss by cancellation of the Ridge Lutheran contract by plaintiff, which is the personally-owned corporation of John and Mary Anderson. Moreover, it appears that Anderson, who controls the plaintiff corporation, was himself convicted of mail fraud violations of

18 USCA, § 1341, in May 1969, for criminal acts in connection with the sale of Ridge Lutheran bonds. He was fined and sentenced to prison by the United States District Court. Gronseth and Vinge were named with him in the same indictment. Gronseth entered a plea of guilty to a violation of 15 USCA, § 77q(a), proscribing fraudulent interstate securities transactions, and was placed on probation by the United States District Court. A similar charge against Vinge was dismissed.

It may be added that on January 24, 1968, the State Department of Commerce issued a cease-and-desist order barring further sales of Ridge Lutheran securities. On the representation that the corporation was a nonprofit religious institution, these bonds had been accorded an exemption from the state securities registration laws. A hearing before the commission disclosed numerous irregularities in the operation of the enterprise, including the disclosure that, despite promotional claims, there had never been any official sanction by, or relationship with, the Lutheran Church.

In considering plaintiff's claim that the trial court erred in granting defendants' motions for summary judgment, it is unnecessary to discuss at any length the principles of law by which a court should be guided in granting that relief. The great volume of authorities on this issue is fully gathered in 10 Dunnell, Dig. (3 ed.) § 4988b. Rule 56.03, Rules of Civil Procedure, by its own language, enjoins the court to render judgment forthwith "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Rule 56.05 further provides that an adverse party "may not rest upon the mere averments or denials of his pleading but must present specific facts showing that there is a genuine issue for trial."

Giving plaintiff the full benefit of the rules that, in summary judgment proceedings, the moving party has the burden of proof

and the nonmoving party has the benefit of having the evidence viewed in the light most favorable to him; and that the motion for summary judgment should be denied if, under the evidence, reasonable men might reach different conclusions (Ahlm v. Rooney, 274 Minn. 259, 143 N. W. [2d] 65; Bennett v. Storz Broadcasting Co. 270 Minn. 525, 134 N. W. [2d] 892; Sauter v. Sauter, 244 Minn. 482, 70 N. W. [2d] 351; Anderson v. Twin City Rapid Transit Co. 250 Minn. 167, 84 N. W. [2d] 593), the obvious conclusion, which cannot be avoided, is that the court had before it a vexatious action predicated upon extravagant, fictitious, and ambiguous claims unsupported by any showing that defendants had acted in any manner other than to protect their rights.

Plaintiff's action is obviously calculated to forestall or interfere with the clear and unassailable rights of bondholders and creditors. A review of the record and an evaluation of the evidence and credibility of statements given by affidavits in support of the motion for summary judgment satisfy us that the issues presented are so frivolous and so insubstantial that it would be futile to try them. Whisler v. Findeisen, 280 Minn. 454, 160 N. W. (2d) 153.

Plaintiff's contention that Linse was without authority to proceed to procure a temporary injunction or an appointment of a receiver is without merit. There is a complete absence of evidence tending to impugn his motives or the propriety of his actions. Certainly he should not be subjected to protracted and expensive litigation simply on the bald assertion in the complaint that he—

"* * * entered into a common plan and design and conspired and colluded to interfere with the management and operation and business of Ridge Lutheran Homes Inc. for purposes of interfering with the contract between Ridge Lutheran Church and plaintiff."

The trial court was correct in granting summary judgment for

Linse. The record compels the same conclusion as it bears upon those named defendants who are only tangentially involved in the litigation through their association with Linse. Oliver Harms, Lutheran Church—Missouri Synod, Minnesota South District of the Lutheran Church—Missouri Synod, Concordia College of St. Paul, Concordia Publishing House, Oscar Husby, Emma Steffens, United States Fidelity and Guaranty Company, and Martin Lieske were also entitled to summary judgments.

Another group of defendants, accused of conspiracy in plaintiff's wide-ranging complaint, filed individual affidavits setting forth specific facts in order to demonstrate an absence of cause of action. As opposed to these affidavits, plaintiff relied upon the bald allegations in its complaint. We said in Rosvall v. Provost, 279 Minn. 119, 124, 155 N. W. (2d) 900, 904:

"Upon a motion for summary judgment supported by affidavits setting out specific facts which, if true, would demonstrate the absence of a cause of action, the adverse party cannot preserve his right to a trial on the merits merely by referring to unverified and conclusionary allegations in his pleading or by postulating evidence which might be developed at trial in the course of cross-examination of adverse parties under the rules. * * * He must instead present specific facts showing a genuine issue for trial."

Accordingly, the following defendants were entitled to summary judgments: Pleuss, Hauptmann, Edward J. Mahnke, Joseph Webb, Providence Church Plan, Inc., Burgdorf, R.K.B. Studios, and Douglas Seltz.

Defendant Hyman Edelman and 12 other members of the law firm of Maslon, Kaplan, Edelman, Borman, Brand & McNulty, who represented the bondholders and creditors in the actions, were also charged with conspiracy and named as defendants. The issue thus presented is too frivolous to merit discussion other than to say that the remedies exercised in behalf of Ridge Lutheran and its bondholders were appropriately chosen and com-

petently presented. Hoppe v. Klapperich, 224 Minn. 224, 28 N. W. (2d) 780. The court was correct in awarding summary judgment to defendant Edelman and the 12 members of his law firm.

The court had no jurisdiction over defendant First National Bank of Hudson, Wisconsin, and an order quashing the alleged service of process was properly granted.

Affirmed as to all defendants.

MR. JUSTICE KELLY, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.