# JEROLD E. MURPHY v.
# COUNTRY HOUSE, INC., AND OTHERS.

240 N. W. 2d 507.

March 5, 1976—No. 45491.

*Ronald O. W. Ylitalo,* for appellant.

*Lawson, Ranum & Raleigh* and *Albert E. Ranum,* for respondents.

Heard by Otis, Scott, and Amdahl, JJ., and considered and decided by the court en banc.

Douglas K. Amdahl, Justice.*

Plaintiff, Jerold E. Murphy, a stockholder, officer, and director of defendant corporation, appeals from a summary judgment in favor of defendants, entered August 5, 1974, pursuant to an order of the Washington County District Court. The complaint sought damages attributable to inadequacy of consideration in a stock transaction occurring on July 23, 1963, and a stock transaction occurring on June 28, 1965; alleged fraudulent misrepresentation of the legal significance of the 1963 transaction and requested a declaratory judgment regarding the effect of that transaction on Murphy's proportional ownership interest in the corporation; and petitioned for involuntary dissolution of the corporation. The trial court held that under the applicable statute of limitations and the doctrine of laches the action was barred.

Murphy and the individual defendants, Kenneth H. Johnson, Myron W. Scullen, and Donald F. Wolf, incorporated Country House, Inc., in July 1963. Each contributed $5,000, and each received 50 shares of stock representing a one-quarter interest in the corporation. Each was named as a director of the corporation, and each became a corporate officer. Johnson became president; Scullen became vice president; Wolf became secretary; and Murphy became treasurer. Each continued to hold his respective corporate office until immediately preceding the commencement of this action by Murphy.

---

* Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

A meeting of the board of directors was held July 23, 1976. Murphy attended this meeting, as he did all directors' meetings. The minutes of the July 23 meeting set forth the following action:

"Kenneth H. Johnson reported that he owned certain franchises and trade names depicting and using Country House, Inc. and also that he had developed various retail outlets for Dairy products, customers, etc. That he offered to sell and transfer such franchises, etc. to the Corporation in exchange for $25,-000.00 worth of stock. Upon motion duly made, seconded and carried the offer of Kenneth H. Johnson was accepted and the President and Secretary of the Company were instructed and authorized to issue him a stock certificate representing 250 shares in the Company upon receipt from him of an instrument conveying to the Company such franchise, trade marks, and customer accounts now established by him and identified as Country House, Inc."

The legal effect of issuing the additional shares was to reduce the ownership interest represented by Murphy's 50 shares from one-fourth to one-ninth. Murphy claims he did not discover that his interest had been so reduced until March 30, 1971.

The transaction occurring on June 28, 1965, was the transfer by Johnson to his son, Gregory, of 50 shares of Johnson's own stock. It is obvious that if Gregory had paid any consideration for the 50 shares, it would have been paid to Johnson personally rather than to the corporation. Murphy was not damaged by the 1965 transaction, and his claim in that respect has no merit and will not be further considered here.

The issues before us are:

(1)    Did the trial court commit prejudicial error in admitting the corporate record book containing the minutes of the July 23, 1963, meeting into evidence?

(2)    Is the applicable 3-year limitation period of Minn. St. 301.15, subd. 5, and 301.16, subd. 4, an absolute bar to Murphy's

claim of inadequacy of consideration for the 250 shares issued to Johnson on July 23, 1963?

(3) To be entitled to a trial on the claim of fraudulent misrepresentation of the legal effect of the July 23, 1963, transaction, Murphy must establish genuine issues as to two material facts. First, did Johnson make misrepresentations? Second, did a fiduciary relationship exist between Murphy and Johnson?

(4) Assuming a cause of action for fraudulent misrepresentation of the legal effect of the stock transaction, did Murphy create any genuine issue as to when he knew or should have known of the fraud, so as to preclude application of laches by trial judge?

■ The error in admitting the corporate record book in evidence was harmless error. Murphy argues that the record book was not admissible in evidence because it was presented to the court by counsel without foundation by a witness under oath. However, Murphy, while denying that he had any recollection of such meeting, quotes the minutes in paragraph III of his second amended complaint. Thus, the trial court had sufficient evidence to find that the minutes were in fact as quoted above without considering the corporate record book and such book was merely cumulative evidence. Furthermore, this does not mean that the trial court relied upon the minutes as conclusive evidence of what happened at the July 23, 1963, directors' meeting, but only that the trial court found that the minutes did exist in the corporate record in the form quoted by Murphy.

■ The cause of action based on inadequacy of consideration is barred by the statute of limitations. Although Murphy's complaint does not allege a basis for the cause of action, no cause of action exists unless it is based on Minn. St. 301.15 or 301.16, which create liability for improper allotment of stock. The applicable period of limitations is 3 years "from the date on which such allotment was made." In contrast, the statute applicable to actions based on fraud provides explicitly that the cause of action "shall not be deemed to have accrued until the discovery

by the aggrieved party of the facts constituting the fraud." Minn. St. 541.05(6). Comparison demonstrates that where the legislature intends the limitation period to be contingent upon the knowledge of the aggrieved party, it has so provided. The 3-year period in Minn. St. 301.15, subd. 5, and 301.16, subd. 4, is by its terms an absolute bar regardless of Murphy's knowledge. This interpretation is strengthened and made reasonable by the statutory requirement that corporate records be available. Murphy claimed by affidavit that the transaction was never made known to him prior to March 30, 1971, "either expressly or through corporate records *readily made available.*" (Italics supplied.) However, he could have enforced his statutory right of inspection even if Johnson were attempting, as alleged, to conceal the records from him.

■■■ Murphy has established genuine issues as to material facts which would support a cause of action for fraudulent misrepresentation of the legal effect of the stock transaction.

In paragraph IV of his complaint, Murphy alleges that Johnson "fraudulently represented that the action taken at the said meeting of July 23, 1963, did not affect or change plaintiff's one-quarter interest in the corporation." However, on a motion for summary judgment, Murphy may not rely upon his pleadings to create a fact issue. 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., p. 572, citing A & J Builders Inc. v. Harms, 288 Minn. 124, 179 N. W. 2d 98 (1970); Lundeen v. Cordner, 354 F. 2d 401, motion to amend judgment denied, 356 F. 2d 169 (8 Cir. 1966). The only evidence relating to the allegation of affirmative misrepresentation was the affidavit of Murphy's wife, in which she stated:

"That on July 23, 1963, defendant Donald F. Wolf and plaintiff Jerold E. Murphy entered Affiant's house and told of a meeting of the corporation in which management control was placed in the hands of Kenneth H. Johnson but each shareholder retained his one-fourth (¼) interest in the corporation."

Even if it is assumed that a misrepresentation was made, the affidavit does not identify Johnson as the source. Furthermore, to the extent such statement is relied upon to prove that a misrepresentation was actually made, it is hearsay and it would not be admissible at trial. Accordingly, it must be disregarded on a motion for summary judgment. Neff v. World Pub. Co. 349 F. 2d 235, 253 (8 Cir. 1965); Rule 56.05, Rules of Civil Procedure. In short, there was no evidence to create a fact issue regarding Murphy's allegation of affirmative misrepresentation.

Other evidence relating to Murphy's allegation of fraud showed that undistributed profits were equally divided among the four original incorporators at the end of each year. Although the payments were labeled as "bonuses," the corporation did not withhold income taxes. Nor did the bonuses bear any relationship to the unequal salaries of the recipients. Murphy argues that the payments were in the nature of dividends and suggests that they were part of a deliberate effort to conceal the reduction of his ownership interest. Having introduced no evidence supporting an intent to conceal, Murphy's own conclusion based upon his interpretation of the bonus payments is not sufficient to create a genuine fact issue. See, Neff v. World Pub. Co. 349 F. 2d 235, 253 (8 Cir. 1965).

Murphy also relies on Wolf's deposition testimony that Wolf may also have believed that his own one-fourth interest remained unchanged. That testimony was changed pursuant to Rule 30.05, Rules of Civil Procedure. Citing 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., pp. 23 and 24, Murphy contends that when such changes occur, the trier of fact must determine the accuracy of the transcription or the validity of the error claimed by the witness. We agree. However, a misunderstanding by Wolf or Murphy of the legal effect of the stock transaction is not evidence of fraud unless Johnson knew of the misunderstanding or had a duty to correct it. With respect to the knowledge of Johnson, an affidavit filed by Murphy states:

"That at all times, plaintiff has held himself out as owner of one-fourth (¼) of the corporation with the knowledge, consent, and approval of defendants."

That statement is nothing more than a general allegation unsupported by specific evidence of occasions when Murphy did so hold himself out in the presence of Johnson. See, Rosvall v. Provost, 279 Minn. 119, 124, 155 N. W. 2d 900, 904 (1968).

Our question is thus reduced to this: Although Johnson had no actual knowledge that Murphy misunderstood the legal effect of the 1963 stock transaction, did he nevertheless have a duty to explain its effect to him because a fiduciary relationship existed, and should Johnson reasonably have anticipated that Murphy would not understand the effect of the transaction? If such a duty existed, Johnson may be liable for fraudulent misrepresentation by silence even though there was no evidence of fraudulent statements or of intentional concealment. Prosser, Torts (4 ed.), § 106, p. 697.

A genuine issue as to the existence of a fiduciary relationship exists. Johnson's deposition indicates that prior to the incorporation of Country House, he was president and general sales manager of Dairy Home, Inc., where he "gained considerable knowledge of business affairs [and] corporations and how they functioned and what their structure was"; that Scullen, Wolf, and Murphy were also employed by Dairy Home, but were "just drivers" and presumably had no knowledge of corporate affairs; that Johnson had sole control of the management of the corporation; and that the other incorporators left their previous employment because of their confidence in him. Such facts may be the basis for a finding that a fiduciary relationship existed. See, Keough v. St. Paul Milk Co. 205 Minn. 96, 104, 285 N. W. 809, 815 (1939). Keough presents a stronger case in support of a fiduciary relationship because there the aggrieved party never received notice of or attended any directors' meetings. But the existence of a fiduciary relationship is a question of fact. Young v. Lucas Const. Co. 454 S. W. 2d 638, 641 (Mo. App. 1970).

Fraud is proved with reference to the specific intelligence and experience of the aggrieved party rather than a reasonable-man standard. Spiess v. Brandt, 230 Minn. 246, 254, 41 N. W. 2d 561, 567 (1950). Whether a duty to speak should be imposed upon Johnson would depend upon factfindings as to the existence of a fiduciary relationship, Murphy's ignorance of the legal effect of stock transactions, and whether Johnson should have reasonably known that Murphy would not understand the legal effect. Johnson's deposition testimony creates genuine issues as to these questions.

The genuine issue concerning existence of a fiduciary obligation is material to the fact of Murphy's discovery of the fraud. Under Minn. St. 541.05(6), claims for relief on the ground of fraud must be commenced within 6 years from the time the aggrieved party discovers or, in the exercise of reasonable diligence, ought to have discovered the fraud. Universal Film Exchanges v. Swanson, 165 F. Supp. 95, 97 (D. Minn. 1958). Delay in discovery may be excusable when a confidential relationship exists. Keough v. St. Paul Milk Co. 205 Minn. 96, 105, 285 N. W. 809, 815 (1939). The determination of when discovery should reasonably have been made is one of fact. See, also, 75 Am. Jur. 2d, Trial, § 371. There are facts from which it could reasonably be found that Murphy should have known the legal effect of the stock transaction, but the function of the trial judge on a motion for summary judgment is not to weigh the evidence. 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., p. 572.

The only evidence relied upon to create a genuine issue precluding summary judgment is Johnson's testimony on deposition admitting the disparity in business experience and indicating invited confidence. A genuine issue must be established by "substantial evidence." 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., p. 572. See, also, 10 Wright & Miller, Federal Practice and Procedure, § 2725, p. 512. The standard is not defined, but it has been applied to require evidence sufficient to avoid a directed verdict at trial. Taylor v. Rederi A/S

Volo, 249 F. Supp. 326, 328 (E.D. Pa. 1966), reversed on other grounds, 374 F. 2d 545 (3 Cir. 1967). "Substantial evidence" thus refers to legal sufficiency and not quantum of evidence. Disparity of business experience and invited confidence could be a legally sufficient basis for finding a fiduciary relationship, and a genuine issue of material fact existed which precluded the granting of summary judgment.

Reversed.