**Kofi BUTLER, Appellant,**

v.

**LEADENS INVESTIGATIONS AND SECURITY, INC., Respondent,**

**Minneapolis Community Development Agency, et al., Respondents.**

**No. C0–93–208.**

Court of Appeals of Minnesota.

July 27, 1993.

Review Denied Sept. 30, 1993.

Frederick E. Finch, Mark R. Whitmore, Bassford, Heckt, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for Butler.

Richard Chadwick, Chadwick, Johnson & Condon, Edina, for Leadens Investigations and Security, Inc., respondent.

John M. LeFevre, Jr., Mary G. Dobbins, Holmes & Graven, Chtd., Minneapolis, for Minneapolis Community Development Agency, et al.

Considered and decided by KLAPHAKE, P.J., FORSBERG and SCHULTZ,* JJ.

_____

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

FORSBERG, Judge.

Kofi Butler filed suit against the Leadens Investigation & Security Corporation (Leadens Security), the Minneapolis Community Development Agency (MCDA), and Waymon Lolar, an employee of the MCDA. He claimed injury under 42 U.S.C. § 1983, unlawful discrimination in hiring, illegal record keeping, and defamation. After discovery, all defendants filed a motion for summary judgment. The motion was granted in all respects, and this appeal follows from entry of that judgment. We affirm.

## FACTS

Kofi Butler, a black male, worked as a security guard at apartment buildings owned by the MCDA while he was employed by Pinkerton Security. In the spring of 1989, Pinkerton lost the MCDA contract and Butler was laid off. He was then hired by Leadens Security in June 1989, and assigned to another MCDA owned apartment.

In August 1989, Butler was selected and trained for the "foot patrol," which was a program designed to provide a more visible security presence at MCDA owned apartments. With the assignment came a $4.00 per hour wage increase.

The foot patrol was supervised by a separate security service run by the MCDA. From December 13, 1989 through Butler's termination, the supervisor of the foot patrol was Waymon Lolar, a black male employee of the MCDA.

On March 10, 1990, Lolar came to a building where Butler and another officer were on duty. Lolar discovered individuals allegedly drinking beer, although Butler claims all the beer cans were empty. Drinking beer in a public space at the housing complex was a violation of MCDA policy and regulations. Lolar reprimanded Butler and his partner for "dereliction of duty." Lolar, by written memorandum, informed Leadens Security of the incident and his dissatisfaction with Butler's job performance.

On March 19, 1990, Butler was suspended for suspicion of dealing drugs while on duty. This accusation was made to Leadens Security by Lolar, who in turn claims to have been told of the activities by several of Butler's fellow security guards. The accusations were passed on to the Minneapolis Police Department. Butler was told that he would be reinstated if the investigation did not produce evidence supporting the charges. In the meantime, Butler was replaced by a white, female Leadens Security employee.

In the course of the investigation, Lolar was told by an informant that Butler had threatened her life soon after the suspension. She claims the threat was made directly in connection with information she might supply about Butler's drug activities. Butler denied ever making these threats nor having anything to do with drugs.

On April 4, 1990, Lolar wrote to the president of Leadens Security requesting Butler be permanently removed from MCDA sites because of the threats, the alleged drug use and distribution, and the "dereliction of duty" regarding the beer cans. MCDA did not have the authority to fire Butler, but did have the contractual right to have him reassigned out of MCDA projects. Leadens Security thereafter fired Butler.

Leadens Security lost the MCDA contract, and the MCDA took over its own security functions. Butler applied to the MCDA for a job on the foot patrol. He received high rankings for experience, education, and other professional qualifications, but scored very poorly in the resident interview rankings. These rankings were given twice the weight of the professional criteria. Butler was not hired. Five of the seven persons eventually hired for the job were minorities.

## ISSUES

1. Did the district court err in finding no basis for Butler's employment discrimination cases based upon application of the *McDonnell Douglas* and *Sigurdson* cases?

2. Did the district court err by finding there was no infraction of the Minnesota Human Rights Act when Leadens Security compiled racial data on Butler?

## ANALYSIS

■ The district court granted summary judgment on all causes of action in Butler's complaint. Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law." Minn.R.Civ.P. 56.03. On appeal, this court must determine "(1) whether there are any genuine issues of material fact, and (2) whether the trial court erred in its application of the law." *City of Va. v. Northland Office Properties Ltd. Partnership*, 465 N.W.2d 424, 427 (Minn.App.1991), *pet. for rev. denied* (Minn. Apr. 18, 1991). The reviewing court "must take a view of the evidence most favorable to the one against whom the [summary judgment] motion was granted." *Abdallah, Inc. v. Martin*, 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954). However,

[i]n order to successfully oppose a motion for summary judgment, a party cannot rely upon mere general statements of fact but rather must demonstrate at the time the motion is made that specific facts are in existence which create a genuine issue for trial.

*Hunt v. IBM Mid Am. Employees Fed. Credit Union*, 384 N.W.2d 853, 855 (Minn. 1986). *See* Minn.R.Civ.P. 56.05.

### I.

The district court determined the MCDA could not be a party to this suit because it was not Butler's employer. Butler appeals claiming the loaned servant and joint employer doctrines apply. We need not reach this issue because we conclude that even if the MCDA was a joint employer and Butler was a loaned servant, there was no basis for a claim of discrimination, and summary judgment was properly entered.

■ Butler's Title VII claims are subject to a three-part test for showing discrimination in employment practices which was first set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This same test has been used to analyze discrimination claims under the Minnesota Human Rights Act (MHRA) in *Danz v. Jones*, 263 N.W.2d 395, 398–99 (Minn.1978). This test requires written findings on the following issues:

First, the plaintiff must present a prima facie case of discrimination by a preponderance of the evidence. This requires the plaintiff to present proof of discriminatory motive.

\* \* \* \* \* \*

If the plaintiff is successful in establishing a prima facie case, the second step in the *McDonnell Douglas* analysis creates a presumption that the employer unlawfully discriminated against the employee, and the burden of production shifts to the employer to present evidence of some legitimate, non-discriminatory reason for its actions.

\* \* \* \* \* \*

If the employer succeeds in carrying its burden of production, the third step of the *McDonnell Douglas* analysis requires the plaintiff, in order to prevail, to show that the reason or justification stated by the employer is actually a pretext for discrimination.

*Sigurdson v. Isanti County*, 386 N.W.2d 715, 720 (Minn.1986) (citations and footnote omitted).

■ To show a prima facie case of discrimination Butler must show he is a member of a protected group, that he sought and qualified for opportunities Leadens Security and the MCDA made available to others, that he was denied opportunities, and that after the opportunities were denied they remained open or given to other people with his qualifications. The district court found no prima facie case was established under this test against Leadens Security because it did, in fact, hire and assign Butler to the foot patrol, as per his application. Likewise, as to the

MCDA's refusal to hire Butler, the positions went to persons with higher test scores, uniformly applied to all applicants. Additionally, five of the seven positions were eventually awarded to minority candidates.

Even if the prima facie case was established, Leadens Security and the MCDA were able to show a legitimate business reason for the termination. Specifically, the incidents of dereliction of duty, alleged drug dealing and threatening a drug informant.

■ Butler claims these reasons are insufficient to satisfy the *McDonnell Douglas* test. Specifically, Butler claims there is no admissible evidence that the threatening incident occurred, nor that he was dealing drugs. Butler claims the evidence in support of the reasons is hearsay and inadmissible on a motion for summary judgment. *See Murphy v. Country House, Inc.*, 307 Minn. 344, 349, 240 N.W.2d 507, 511 (1976).

This assertion is mistaken. Minn.R.Evid. 801(c) defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The statements alluded to here are not being offered for the purpose of showing that Butler was dealing drugs or threatened a witness. Rather, the statements are being offered to show a nonpretextual, business purpose existed for the termination, surveillance, and investigation which Butler claims was discriminatory. These statements are similar to an officer's testimony of an informant's tip which was offered to explain the existence of surveillance; such evidence is not hearsay. *See State v. Ford*, 322 N.W.2d 611, 615 (Minn.1982).

Finally, there is no evidence of pretext. Specifically, the MCDA hired protected class members as five of seven foot patrol guards when it took over direct control of hiring its security forces. We cannot conclude that Butler was discriminated against due to his status, when persons possessing the same status were hired to the same position.

■ Leadens Security did replace Butler with a white female following his first suspension. Although Butler claims the accusations and suspension were racially motivated, there is nothing directly or circumstantially in the record showing any racial motivation. Under Butler's reasoning, any time a protected class member is accused of wrongdoing, or terminated, there is a presumption that the action was based upon the class status. No such presumption is present in the *McDonnell Douglas* test. Rather,

> the plaintiff has the burden of persuading the court by a preponderance of the evidence that the employer intentionally discriminated against [him]. The plaintiff may sustain this burden "either directly by persuading the court that a discriminatory reason likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."

*Sigurdson*, 386 N.W.2d at 720 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)). There is no direct evidence of a "discriminatory reason," and the actions of the MCDA and Leadens Security give no cause for believing their explanation is pretextual.

Since Butler was unable to show race discrimination, the court properly entered judgment on the Title VII and MHRA causes of action. Likewise, Butler's claim under 42 U.S.C. § 1983 was properly dismissed since Butler showed no deprivation of any right guaranteed under the United States Constitution.

**II.**

■ Butler contends Leadens Security impermissibly and improperly collected racial data on Butler. The MHRA makes it an unfair employment practice to

> require or request the person to furnish information that pertains to race, color, creed, religion [or] national origin * * * unless * * * for the purpose of compliance with the public contracts act or any

rule, regulation, or laws of the United States or of this state requiring [such] information.

Minn.Stat. § 363.03, subd. 1(4)(a) (1990).

Leadens Security's relationship with the MCDA was covered under the public contracts act, Minn.Stat. §§ 363.073 to 363.075 (1990). Therefore, the MHRA specifically permits the collection of race data. Likewise, Leadens Security was required to submit an affirmative action plan to the MCDA as a prerequisite for its contract.

Butler contends that a fact issue is raised, even in the face of the specific statutory language, as to whether or not the reason for collection of the data was totally and exclusively compliance with the affirmative action plan. However, Minn. R.Civ.P. 56.05 requires a party to rely on more than mere averments to avoid summary judgment. The record contains absolutely no evidence that the gathering of race data was used for any purpose other than the affirmative action requirements and the Public Contracts Act. To the contrary, the record shows race played no role in the decision to hire, promote, or fire Butler.

## DECISION

The district court properly found appellant failed to satisfy each prong of the *McDonnell Douglas* test, and therefore correctly entered judgment in favor of respondents. Any racial statistics collected by respondent Leadens Security were statutorily authorized. The judgment of the district court is therefore affirmed.

**Affirmed.**