THE MINISTERS LIFE AND CASUALTY UNION AND ANOTHER v. FRANKLIN PARK TOWERS CORPORATION.

239 N. W. 2d 207.

January 30, 1976—No. 45456.

*Karlins, Grossman, Karlins, Siegel & Brill* and *Sheldon D. Karlins,* for appellants.

*Rosen, Kaplan & Ballenthin* and *William S. Rosen,* for respondent.

Heard before Sheran, C. J., and Otis, Todd, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

TODD, JUSTICE.

The Ministers Life and Casualty Union and Preferred Risk Life Insurance Company (Ministers) appeal from the judgment of not guilty in an unlawful detainer proceeding against Franklin Park Towers Corporation (Franklin). Ministers' claim is based on its interest in land established pursuant to documents apparently creating a sale and leaseback arrangement, but which the lower court construed to give rise to an equitable mortgage. We reverse and remand.

Franklin is a holding corporation engaged in the construction and operation of apartment rental units. Its president and sole shareholder, Stephen A. Scallen (Scallen), is an experienced lawyer, holds a faculty position at the University of Minnesota Law School, and has conducted courses and seminars in real estate law. He is an experienced and sophisticated real estate developer and investor, who at the time of trial had interests in over a dozen real estate development projects with mortgage balances in excess of 20 million dollars.

The site in question was acquired by Scallen and, with a partner whose interest he now owns, he arranged the construction of a 182-unit apartment complex on the property. To finance the construction, Scallen obtained a $1,900,000 first mortgage loan. In addition, he also arranged a second mortgage which bore interest at 18 or 19 percent. Upon completion of the building, unpaid bills of approximately $100,000 were outstanding.

In order to pay off the second mortgage loan and the outstanding construction bills, Scallen enlisted the aid of the Eberhardt Company. Eberhardt's efforts to assist him in refinancing the project through an increase in the existing first mortgage, or through new second mortgage money upon more advantageous terms, were unsuccessful. Eberhardt then prepared and circulated to potential investors a subordinated land sale and leaseback proposal involving a sale of the land for $450,000 with a leaseback for 50 years at an 11-percent net rental. The proposal made no mention of an option to repurchase.

These terms interested Ministers, and the two plaintiffs agreed to jointly purchase the property. Negotiations were held between Ministers and Franklin, represented by Scallen, and the parties consummated the transaction in general accord with the terms originally proposed by Scallen through his agent, Eberhardt. Ministers specifically rejected Scallen's request for a repurchase option, but the lessee was given the right to sell the land to third parties, subject to the lessor's right of first refusal. In addition, title to the apartment building itself was to remain in the lessee until the termination of the lease, and the lessee was responsible for payment of the first mortgage, taxes, assessments, insurance, utilities, and maintenance and repair expenses.

In December 1970, Ministers paid $450,000 to Franklin and received a warranty deed [1] to the property, subject to the existing first mortgage. Franklin received a 50-year lease of the land, including terms relating to its continued ownership of the building until the expiration of the lease, at which time all of the buildings and improvements on the land were to become the property of Ministers. Both the title insurance policy and the property insur-

---

[1] Typed on the deed in different typeface from the main body were the words "STATE DEED TAX DUE HEREON—$2.20", indicating a consideration of $1,000 or less. See, Minn. St. 287.21. No evidence was introduced as to which party added this recitation, and since the payment of the deed tax is the seller's responsibility pursuant to Minn. St. 287.24, we attach no importance to this statement.

ance policy which were issued to cover the subject premises insured Ministers' interest as fee owner and Franklin's as lessee.

Late in 1973, Franklin sought to sell the subject premises to University Community Properties, commonly referred to as Cedar-Riverside. In conducting these negotiations, Scallen held himself out as a lessee of the property. In fact, Cedar-Riverside refused to purchase Franklin's interest unless an option for repurchase could be added to the lease agreement. Accordingly, at Scallen's suggestion, Cedar-Riverside's president negotiated an amendment to the lease with Ministers which established an option to repurchase and also provided for increased rentals on the land after 10 years. Thereafter, Franklin's sale to Cedar-Riverside was closed, but Cedar-Riverside subsequently defaulted in its payments to Franklin, so the latter resumed its collection of all rentals from the property.

It is not disputed that since April 1974 Franklin has not paid any rent, interest due on overdue rent, or mortgage payments due under the first mortgage, all of which it is required to pay under the terms of the lease. Because of Franklin's failure to make payments on the first mortgage, that mortgage was being foreclosed at the time of trial in the present action. As a result of these delinquencies, Ministers properly notified Franklin of its breach of the lease agreement and upon Franklin's continued failure to meet its obligations, unsuccessfully sought to gain possession of the property by instituting this unlawful detainer action in the Hennepin County Municipal Court.

Ministers challenges the lower court's holding that the sale-leaseback financing arrangement constituted an equitable mortgage and raises other issues regarding the jurisdiction of the municipal court in unlawful detainer proceedings.

■ This court has on numerous occasions considered claims that a deed absolute on its face was in fact given as security, and, therefore, constitutes an equitable mortgage. See, 12 Dunnell, Dig. (3 ed.) § 6154, et seq. The controlling legal principle governing our resolution of all of these cases is that a deed absolute

in form is presumed to be, and will be treated as, a conveyance unless both parties in fact intended a loan transaction with the deed as security only. Some of the corollaries to this rule which are particularly relevant to an evaluation of the present fact situation are:

(1) Testimony as to the intention of one party only is insufficient as proof that a transaction in form a sale was in fact an equitable mortgage; it must appear that *both* parties so intended.

(2) The relevant intention is that of the parties *at the time of conveyance*. St. Paul Mercury Ind. Co. v. Lyell, 216 Minn. 7, 11 N. W. 2d 491 (1943).

(3) Intention is to be ascertained by the written memorials of the transaction and the attendant facts and circumstances. The fact that the documents and negotiations were not in terms of "debt", "security", or "mortgage" is a strong circumstance indicating that the parties did not have a mortgage in mind. Westberg v. Wilson, 185 Minn. 307, 309, 241 N. W. 315, 316 (1932).

(4) The parties have an absolute right to bargain either for a sale or a loan. Either form of transaction, if intended in good faith, will be upheld. Westberg v. Wilson, *supra*.

(5) The fact that the instrument claimed to be a mortgage does not contain a statement as required by Minn. St. 287.03 that it is intended for security is important, particularly where the documents were prepared by lawyers. Ekberg v. Thein, 291 Minn. 315, 191 N. W. 2d 414 (1971).

(6) The fact that the grantor is experienced in business and real estate transactions, and is represented by a lawyer, is material. Ekberg v. Thein, *supra*. These factors are relevant because it is the fraudulent possibilities inherent in a transaction where a deed absolute on its face was intended as security which gives rise to the rule that such an instrument can be construed as an equitable mortgage. Hewitt v. Baker, 222 Minn. 292, 302, 24 N. W. 2d 47, 52 (1946).

(7) Although no personal obligation on the part of the mort-

gagor is necessary to a valid mortgage, the absence of such an obligation is a material circumstance in determining whether a deed was intended as a mortgage or as an absolute conveyance. Lundeen v. Nyborg, 161 Minn. 391, 201 N. W. 623 (1925).

■ Running through all of these cases is the basic philosophy that a court will exercise its equitable powers to effectuate the intent of both parties to a transaction and to prevent any over-reaching by one party which would unfairly exploit the other party's financial position or relative lack of expertise in real estate dealings. Applying this basic principle to the instant case, we first observe the unique situation of the party here seeking to invoke this court's equitable intervention. Franklin was represented throughout its dealings with Ministers by Scallen, whose sophistication and expertise in the field of real estate financing are so great that our basic concern for protecting a party against overreaching, which in past cases has prompted this court to construe a deed absolute on its face as an equitable mortgage, simply is not a factor here. In fact, the evidence in this case can lead to the conclusion that if there was any overreaching, it was on the part of the grantor, rather than the recipient, of the deed.

■ Since Scallen is Franklin's president and sole shareholder, Scallen's actions and intentions may be ascribed to Franklin. The fact that Scallen is a lawyer with unusual expertise in complex real estate financing is a factor that should therefore be given weight in evaluating Franklin's claim that the original transaction was intended as an equitable mortgage. Ekberg v. Thein, *supra*. No such claim was made until cancellation proceedings were commenced by Ministers. Yet, as we held in St. Paul Mercury Ind. Co. v. Lyell, *supra*, the relevant intent of the parties for determining the nature of the transaction is that which they manifested *at the time of conveyance*. Here, none of the documents or negotiations surrounding the conveyance contained any indication that the transaction was intended to create an equitable mortgage; "debt", "security", "mortgage", or other like terms which would have evinced such an intent were not mentioned in

the documents establishing the sale and leaseback.

We must bear in mind that Eberhardt, acting as Scallen's agent, proposed the form of the agreement prior to any involvement by Ministers. This proposal followed an unsuccessful exhaustion of both first and second mortgage money availabilities. The proposal presented a commitment by Franklin to the absolute transfer of title to the land in question with no repurchase options. Franklin's rights with respect to the subject property were further circumscribed by the provision in the lease which gave Ministers a right of first refusal on any sale by Franklin to third parties, a right totally inconsistent with a mere mortgage interest in the property. Furthermore, there was no evidence of debt, such as a promissory note, and there was no method provided for repayment of the principal other than the possible sale to a third party.

In light of the test of intention prescribed in Westberg v. Wilson, *supra,* in which this court placed great weight on the written memorials of the transaction and the fact that the documents and negotiations were not in terms of "debt", "security", or "mortgage", all of the above-described aspects of the present transaction must be considered very strong evidence indicating that the parties did not have an equitable mortgage in mind.

In accordance with the rule that before a court will hold a deed absolute on its face to be an equitable mortgage, it must appear that *both* parties so intended, we have specifically held that even if one party actually intended to enter into a mortgage agreement, unless the other party had the same intention, the transaction should not be construed to be an equitable mortgage. Nitkey v. Ward, 199 Minn. 334, 343, 271 N. W. 873, 878 (1937). Therefore, a determination in the present case that either of the parties did not intend to create an equitable mortgage would be sufficient basis for a reversal of the trial court's ruling that the transaction should be so characterized.

Evaluating all the facts and circumstances on the record herein according to the legal standards for ascertaining whether the

parties intended an equitable mortgage which are set forth *supra*, we hold that as a matter of law Scallen did not intend at the time of the execution of the sale-leaseback transaction that the warranty deed given by Franklin represent anything other than an absolute conveyance. Until the 1973 default, every document exchanged between the parties described Ministers as the owner of the subject property, and Franklin as a mere lessee. When a title insurance policy issued insuring Ministers' title as owner of the property, Scallen did not object, nor did he advise the insurer of his view that Ministers was an equitable mortgagee rather than the owner of the premises. Even more significant is the fact that Scallen himself arranged for the property insurance on the subject premises, and the resulting policy named Ministers as lessor and Franklin as lessee. Finally, even after Franklin first notified Ministers of its claim that the transaction was an equitable mortgage, throughout Franklin's subsequent negotiations with Cedar-Riverside for the sale of its interest in the property, Franklin referred to itself as lessee rather than owner.

Therefore, since one of the parties did not intend the transaction to be a security device, the doctrine of equitable mortgage has no application. Having so determined, we need not consider other issues raised by appellants and respondent.

Reversed and remanded with instructions to enter judgment of restitution for plaintiffs.