**Paul K. MILLER, Respondent,**

v.

**Warren Mixer ANDERSON, a.k.a. Warren M. Anderson, et al., Appellants.**

**Victoria State Bank, et al., Defendants.**

**No. C8–86–583.**

Court of Appeals of Minnesota.

Oct. 14, 1986.

George G. Eck, William R. Stoeri, Dorsey & Whitney, Minneapolis, for respondent.

JoAnne Jankowski, Holm & Jankowski, Brooklyn Park, for appellants.

Heard, considered and decided by LESLIE, P.J., and WOZNIAK and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

This appeal raises the question whether a lender is entitled to summary judgment on notes given for money lent for the renovation of residential property, where the lender has already cancelled the borrower's contract for the purchase of the same property. The trial court entered judgment against appellants due to their default on two promissory notes. The court also allowed a mortgage foreclosure sale on a home and other real property given as security for the promissory notes. We affirm.

## FACTS

In 1979, appellant Westwood Realty agreed to buy residential property from respondent Miller for $86,000. Miller agreed to sell the property on a contract for deed, and he also agreed to loan Westwood $50,000 to finance renovation of the property. Westwood executed a promissory note to Miller for $50,000. Payment of the contract and the note was secured by a personal guarantee of appellants Warren and Dorene Anderson, officers of Westwood; Warren Anderson was the sole stockholder of Westwood. To secure the guarantee, the Andersons gave Miller a $50,000 mortgage on their homestead.

When the contract and note came due, the renovation remained incomplete. The parties agreed to extend the due dates on the contract and the note, and Miller agreed to loan Westwood an additional $100,000 for use in the renovation. Westwood executed a second promissory note to Miller for $100,000; the Andersons again executed a personal guarantee covering the new note and the earlier contract and note. To secure the guarantee, the Andersons gave Miller a second mortgage on their homestead and mortgages on two other parcels of real estate (Eureka and Minnetrista). Westwood backed the new note with a mortgage on its vendee's interest in the contract for deed on the property being renovated.

Appellants did not finish renovating the property, and they defaulted on both notes and the contract for deed. Miller eventually commenced statutory contract for deed cancellation proceedings. During the statutory redemption period, Westwood did not institute statutory proceedings to prevent or delay the cancellation. Although the parties met during that period to negotiate a release of Miller's security interests and payment of the contract for deed, they were unable to reach a final agreement.

Miller took possession of the property, expended additional sums to complete the renovation, earned some rental income from the property, and then sold the property for $135,000, realizing $4300 over the contract price and his costs for improving and selling the property. Miller also satisfied the mortgage Westwood had given him on its vendee's interest in the contract for deed.

Miller brought the present action against Westwood, the Andersons, and several other mortgagees with interests in the Andersons' homestead property and Eureka property. Miller sought judgment against Westwood as debtor and the Andersons as

guarantors for the $50,000 note and the $100,000 note. He asked for $150,000 less the $4300 that he recovered on the sale of the renovated property, plus accrued interest. He also asked for foreclosure of the mortgages on the Andersons' homestead and the Eureka property,[1] and for a determination of the priorities of all existing mortgages on those properties.

The trial court entered summary judgment for respondent; the Andersons appeal.

### ISSUE

Do genuine issues of material fact remain?

### ANALYSIS

A motion for summary judgment may be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law. Minn.R.Civ.P. 56.03. The courts must view the evidence in the light most favorable to the one against whom the motion was granted. *Grondahl v. Bulluck*, 318 N.W.2d 240, 242 (Minn.1982).

Appellants submit numerous reasons why they have legal cause to avoid payment of the sums owed Miller. Underpinning all of his arguments, however, is a general plea for equitable relief, a claim that Miller would be unjustly enriched if permitted to cancel the contract for deed, repossess the property, enforce payment of the auxiliary loans, and foreclose on mortgages given as security. We can identify no basis to void appellants' liability to Miller under the law establishing the obligations.

#### 1.

First, appellants claim that Miller breached the settlement agreement negotiated during the statutory redemption period. Warren Anderson claims he tendered the full amount of the contract on the agreed date, complying with both the statutory requirements for prevention of the cancellation of the contract and the negotiated settlement agreement. This argument is without merit. It was Westwood's burden to meet the statutory requirements by either obtaining a court order to suspend cancellation proceedings or paying the amount of the contract within 30 days of notice. *See* Minn.Stat. § 559.21 (1984). Although Anderson evidently tendered the money on the date suggested in negotiations by the parties, that date fell two days after the expiration of the statutory redemption period, and the parties failed to reach a final agreement. Thus, appellants waived rights to protection under the statute.

The purported settlement did not provide for Miller's release of his mortgage interest in the contract for deed; Miller declined to release this interest pending further payments discussed during settlement negotiations. The absence of this significant consideration indicates there was no final agreement. The record shows that Anderson's bank initially provided him with the cash to pay off the contract, but with the understanding that the bank would hold the first mortgage on the improved property. When the bank learned that Miller would not satisfy his mortgage on the contract for deed, it informed Miller the bank would not authorize payment on the check under those conditions. Accordingly, Miller refused to accept the check from Anderson. If there was an agreement, the breach was Anderson's because he could not meet the bank's requirements for lending him the money.

#### 2.

Second, appellants argue that the contract for deed was an equitable mortgage and that cancellation of contract for deed proceedings are ineffective against it. They rely on language from *Albright v. Henry*, 285 Minn. 452, 174 N.W.2d 106 (1970) that

---

**1.** The mortgage on the Minnetrista property was    previously released.

when the real nature of a transaction between the parties is that of a loan, advanced upon the security of realty granted to the party making the loan, whatever the form of the instrument of conveyance taken as the security, it is treated in equity as a mortgage.

*Id.* at 460, 174 N.W.2d at 111.

■ Appellants misconstrue the characteristics of equitable mortgages. An equitable mortgage may exist when a deed absolute on its face was in fact given as security, i.e., when the borrower deeds property to the lender in exchange for a loan of money. *Ministers Life and Casualty Union v. Franklin Park Towers Corp.*, 307 Minn. 134, 137–38, 239 N.W.2d 207, 210 (1976). Title to the property involved in an equitable mortgage starts with the borrower and passes to the lender as security for the money borrowed. Here, title originated with Miller, the lender.

Evidently, the basis appellants assert for this claim is the transaction which involved Westwood's mortgage of its vendee's interest in the contract for deed. They contend that the mortgage effectively returned or conveyed title to Miller as security for the $100,000 loan.

As previously noted, Miller continuously held title to the property. Westwood and the Andersons possessed no title to grant. What Westwood granted was a mortgage on its vendee's interest in the property. There is no reason to reconstruct the nature of the initial contract based on this subsequent transaction.

■ Finally, a transaction will not be construed as an equitable mortgage unless both parties intended to enter into a mortgage agreement. That intent is absent on Miller's part. Moreover, *Franklin* held that the "relevant intention is that of the parties *at the time of the conveyance.*" *Id.* (emphasis in original) (citation omitted). Appellants have provided no evidence that either party intended a mortgage agreement at the time of the conveyance.

### 3.

■ Appellants argue that equity should bar Miller from seeking further recovery against Westwood and the Andersons because he repossessed the property after Anderson had substantially completed the renovation and therefore unjustly benefited from the property's increased value. They contend the repossessed property had value in excess of all their debts to Miller and was later sold for less than real value. Although the statutory cancellation of a contract for deed does not preclude a claim of unjust enrichment, appellants must make a threshold showing of fraud, mistake, or moral wrongdoing on the part of the contract for deed vendor. *Fort Dodd Partnership v. Trooien*, 392 N.W.2d 46 (Minn.Ct.App.1986). Appellants provide no such evidence. Appellant Warren Anderson is an experienced real estate dealer. The record shows Miller repeatedly accommodated appellants by extending the contract due date, loaning additional funds, agreeing to settle all debts if they would pay off the contract plus an additional $139,000 and attorney's fees, waiving repayment of all the interest, and deducting the $4300 sale recovery from his claim against appellants. In addition, after retaking possession of the property, Miller spent an additional $40,000 to finish the renovation before selling the property. Although appellants aver that respondent was "overreaching" in selling the property for a price below its appraised value, there is no evidence that respondent was unjustly enriched or that equity bars him from recovery on the other debts.

### 4.

■ Appellants contend there are still other grounds that compel reversal of the summary judgment order. They argue Miller "elected" to cancel the contract for deed and is therefore estopped from pursuing "other remedies" of foreclosure. This argument might be probative if Miller sued to recover the contract price in addition to cancelling the contract. The cancellation of the contract is distinct, however, from

Miller's right to collect each debt incurred by Westwood, debts which were guaranteed by the Andersons and secured by various mortgages.

Appellants argue further that the Andersons as guarantors were released from their obligation because Miller "materially departed" from contract terms by refusing to advance payment for cabinets installed on the property. *See Schmidt v. McKenzie,* 215 Minn. 1, 9, 9 N.W.2d 1, 5 (1943). The record indicates, and appellants do not deny, that Miller disbursed all of the $50,000 and the $100,000 that he agreed to lend. There is no evidence that Miller failed to comply with the terms of either loan agreement.

■■■ Appellants argue that the cancellation is void because neither Warren nor Dorene Anderson were served notice in their individual roles as guarantors. However, the statute does not require notice to guarantors, but only to the "purchaser, his personal representatives or assigns." Minn.Stat. § 559.21 (1984). Notice was properly served on Dorene Anderson as Secretary of Westwood, the purchaser.

■■■ Appellants argue that Miller's satisfaction of the mortgage on Westwood's vendee's interest also extinguished the outstanding mortgages on the Andersons' homestead and the Eureka and Minnestrista properties. This argument has no merit. Miller's satisfaction of the mortgage merely released Westwood as mortgagor so that new buyers would receive clear title. That release had no connection to the Andersons' responsibilities under their guarantors' mortgage covering the Eureka, Minnestrista, and homestead properties for a total amount of $100,000.

In sum, undisputed evidence shows that appellants never paid Miller the $150,000 they borrowed from him and failed to pay the contract for deed under the agreed terms. Appellants do not dispute the validity of any of the primary or supporting documents evidencing the parties' agreement. They did not take steps available to them to suspend cancellation of the contract for deed by court order while the parties resolved their claims to the property.

No genuine issue of material fact remains.

## DECISION

The trial court properly granted summary judgment.

Affirmed.