Michael FARRELL, Trustee of the Estate
of Helen Bernice Peterson, d/b/a Val
Chatel Ski Resort, Respondent,

v.

Richard A. JOHNSON, Defendant,

John Speakman, et al., Appellants.

No. C8–89–419.

Court of Appeals of Minnesota.

July 3, 1989.

Lowell P. Bottrell, Fargo, for respondent.

Scott J. Strouts, Minneapolis, for appellants.

Considered and decided by WOZNIAK, C.J., and PARKER and KALITOWSKI, JJ., without oral argument.

## OPINION

WOZNIAK, Chief Judge.

John Speakman and James Vander Griend appeal from a judgment entered against them by the trial court on December 16, 1988. The trial court adjudged appellants and Richard Johnson liable for the value of promissory notes they executed to Helen Peterson and entered judgment for respondent in the amount of $120,000. We reverse and remand.

## FACTS

This case was submitted to the trial court on stipulated facts for an adjudication of the parties' contractual rights and obligations. The relevant facts for purposes of this appeal are as follows:

Helen Peterson owned the Val Chatel Ski Resort (Resort) as of the date of filing her bankruptcy petition under Chapter 11 on April 26, 1982. On September 16, 1984, Val Chatel, Inc. (Val Chatel), which is owned and operated by Richard Johnson and appellants John Speakman and James Vander Griend, entered into a sales agreement with Peterson for the purchase of the Resort. On the same date, the parties also executed a separate closing agreement pertaining to the Resort.

In the sales agreement to purchase the resort, Val Chatel agreed to assume and satisfy all liabilities owed by Peterson and the Resort. Johnson and appellants also agreed to pay Peterson $130,000 "by Promissory Notes personally guaranteed jointly and severally" over a five-year period. Section 16 of the sales agreement provides as follows:

This contract constitutes the entire agreement of the parties on the subject matter dealt with. No promise or undertaking has been made by any party, and no understanding exists with respect to the properties sold or the income therefrom, except as herein expressly set forth. All prior and contemporaneous negotiations and understandings between the parties are embodied in this contract.

The closing agreement incorporates the parties' sales agreement by reference and states that "the parties have reached an agreement to close in escrow pending the occurrence of certain events and the completion of financing arrangements." The closing agreement provides that the promissory notes shall be held in escrow until (1) the sale is approved by the bankruptcy court, and (2) Val Chatel assumes and satisfies all of Peterson's existing liabilities.

On March 7, 1986, respondent Michael Farrell, the appointed trustee in bankruptcy of Peterson's estate, commenced an action against Johnson and appellants to collect on the promissory notes. Appellants defended the action by asserting that the closing agreement modified the sales agreement, making the receipt of sufficient outside financing by Val Chatel a condition precedent to enforcement of the promissory notes.

The trial court found:

1. The Sales Agreement was a complete and final expression of the agreement between the parties and no other evidence need be considered to interpret the contract.

2. The Sales Agreement did not anticipate financing as a condition precedent.

3. The promissory notes were properly executed and delivered.

4. [Johnson and appellants] are jointly and severally liable on the promissory notes.

Based on these findings, the trial court ordered Johnson and appellants liable for $120,000, the stipulated value of the promissory notes.

## ISSUE

Did the trial court err in determining the sales agreement was a complete and final expression of the parties' agreement?

## ANALYSIS

Appellants appealed from the judgment entered after trial and did not move for a new trial. Under these circumstances, this court's scope of review is limited to determining "whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and the judgment." *H.J. Kramer Plumbing & Heating, Inc. v. Scharmer,* 386 N.W.2d 742, 745 (Minn.Ct.App.1986) (quoting *Gruenhagen v. Larson,* 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976)).

The trial court ruled section 16 of the sales agreement was proof of the parties' intent to make the sales agreement a "complete and final expression of their agreement." Section 16 is a "merger clause" which merges "prior negotiations" into the writing. Farnsworth, *Contracts* § 7.3, at 458 (1982). A merger clause is usually conclusive in determining whether the agreement is completely integrated for purposes of the parol evidence rule. *Id.* But the parol evidence rule has no application here since appellants are not attempting to prove prior or contemporaneous oral negotiations. To the contrary, appellants are urging for consideration of a subsequent written document (the closing agreement). Therefore, section 16 should not be considered proof of whether the sales agreement contained the parties' full agreement.

Generally, instruments executed at the same time, by the same parties, relating to the same transaction will be considered and construed together, since they are, in the eyes of the law, one contract or instrument. *Anderson v. Kammeier,* 262 N.W.2d 366, 370 n. 2 (Minn.

1977); *Anda Construction Co. v. First Federal Savings & Loan Association,* 349 N.W.2d 275, 278 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Sept. 5, 1984). *See also* Restatement of Contracts § 235(c) (1932) (all writings forming part of the same transaction are interpreted together). Whether separate documents executed simultaneously should be treated as a single contract is governed by the intent of the parties manifested at the time of contracting and viewed in light of the surrounding circumstances. *Dynamics Corp. v. International Harvester Co.,* 429 F.Supp. 341, 345–46 (S.D.N.Y.1977).

Here, the parties expressly referred to the sales agreement in the closing agreement and incorporated the agreements into one another. The agreements were made on the same day and obviously have overlapping significance. For instance, as appellants point out, the promissory notes at issue here, although referred to in the sales agreement, were actually made a part of the closing agreement. Also, terms of both the sales agreement and the closing agreement were submitted to the bankruptcy court as part of Peterson's plan of reorganization. This evidence strongly supports treating the agreements as a single contract.

Moreover, although research discloses no case which has expressly addressed the issue presented here, courts generally look at both the parties' sales agreement and closing agreement in determining their contractual rights. *See, e.g., Match Point, Ltd. v. Adams,* 148 Ga.App. 673, 252 S.E.2d 90 (1979) (sales contract and closing agreement executed in transfer of corporation examined together in assessing parties' rights); *Court Rooms of America, Inc. v. Diefenbach,* 425 N.E.2d 122 (Ind.1981) (parties' agreement regarding sale of corporate stock was encompassed in both sales agreement and closing agreement); *Walker v. Universal Business Association,* 482 So.2d 992 (La.Ct.App.1986) (court looked to both purchase agreement and closing agreement in assessing plaintiff's claim for redhibition in connection with sale of mobile home); *Ready Sand and Gravel Co. v. Cornett,* 184 Neb. 726, 171 N.W.2d 775 (1969) (closing agreement relevant in determining meaning of language contained in parties' sales agreement).

Respondent maintains, however, that consideration of the closing agreement was unnecessary since the sales agreement was not ambiguous. But whether simultaneously executed documents will be read together is not contingent upon a finding of internal ambiguity. Ambiguity is simply one circumstance of many under which the trial court will be allowed to look outside the contract to ascertain the parties' intent.

## DECISION

The trial court erred in determining the sales agreement was a complete and final expression of the parties' agreement. We reverse and remand with instructions for the trial court to consider both the sales agreement and the closing agreement in deciding appellants' liability for the promissory notes.

Reversed and remanded.