George J. CHERGOSKY, et al.,
Respondents,

v.

CROSSTOWN BELL, INC., et
al., Appellants,

Katz, Davis & Manka, Ltd., et
al., Defendants.

No. C0–89–2181.

Court of Appeals of Minnesota.

May 1, 1990.
Review Denied June 15, 1990.

Thomas E. Johnson, Johnson, McClay & Nelson, St. Paul, for respondents.

Phillip R. Krass, Lachlan B. Muir, Krass & Monroe, Chartered, Shakopee, for appellants.

Considered and decided by SHORT, P.J., and NORTON, and MULALLY *, JJ.

## OPINION

MULALLY, EDWARD D., Acting Judge.

On August 1, 1989, the trial court ordered summary judgment, finding Crosstown Bell and Alfred Teien to be liable

---

* Acting as judge of the Court of Appeals by ap-

under a contract for deed to George and Dorothy Chergosky for $97,850.65 plus interest. The trial court also ruled the Chergoskys, as a matter of law, had first priority to a lump sum of money held by the trial court, over the claims of Robert Griffith and the law firm of Katz, Davis & Manka, Ltd. (KDM). Crosstown, Teien and Griffith appeal; KDM does not.

## FACTS

On December 13, 1971, Crosstown Bell was incorporated by Alfred Teien to do business in the State of Minnesota. Teien was listed as the sole officer and shareholder of the corporation. Crosstown then purchased real property located in Richfield, Minnesota.

In late 1971 Crosstown leased the property to Northwestern Bell. The lease gave Northwestern Bell an option to purchase the property after 10 years. The lease was recorded in 1972. Northwestern Bell has occupied the building at all times relevant to these proceedings.

On January 1, 1977, George and Dorothy Chergosky purchased the property from Crosstown for $550,000. They executed a contract for deed and made a $50,000 down payment. The contract gave Crosstown an option to repurchase the property, exercisable by paying the Chergoskys $550,000, less any sums the Chergoskys still owed under the contract for deed. The Chergoskys did not record the contract for deed until August 19, 1985.

On December 7, 1978, Teien executed a $120,000 promissory note to Summit State Bank (now Metropolitan Bank). As security for the loan, Teien assigned to the bank a mortgage covering the Crosstown property. Summit Bank recorded the mortgage on December 18, 1978.

On March 31, 1983, Teien and Crosstown entered into an agreement with Robert Griffith. Under the agreement, Griffith forgave a $163,140 debt owed by Teien and Crosstown. In return, Griffith received a 70% interest in the assets of Crosstown.

pointment pursuant to Minn. Const. art. VI, § 2.

Griffith specifically did not assume any obligations of the Summit Bank mortgage.

In June, 1982, Northwestern Bell notified Crosstown and Teien that it intended to exercise its option to purchase the property. Litigation ensued. The trial court, and ultimately this court, determined Northwestern Bell properly exercised its option to purchase. *See Crosstown Bell, Inc. v. Northwestern Bell Telephone Co.*, 381 N.W.2d 911 (Minn.App.1986), *pet. for rev. denied* (Minn. May 16, 1986). Northwestern Bell obtained title to the property and paid the purchase price into the trial court. $35,165.98 remains in the trial court.

On May 17, 1985, KDM filed an attorney's lien on the property. On August 22, 1985, Metropolitan Bank (formerly Summit Bank) assigned the Teien mortgage to Griffith.

Because the property was purchased by Northwestern Bell, Crosstown was obligated to pay back the Chergoskys under the contract for deed. The Chergoskys claim Crosstown owes them $97,850.65 (the difference between the $550,000 purchase price and $452,149.35 still owing on the contract for deed). Further, the Chergoskys allege that Teien operated Crosstown as an alter-ego and thus, he should be personally liable under the contract for deed.

The trial court granted summary judgment for the Chergoskys, ruling both Teien and Crosstown owed damages of $97,-850.65 to the Chergoskys under the repurchase provision of the contract for deed. Further, the trial court ruled the Chergoskys had first priority to the $35,165.98 held by the trial court.[1] The trial court denied Griffith's summary judgment motion in which he claimed he stood in the shoes of Metropolitan Bank's priority over the Chergoskys' contract for deed.

## ISSUES

1. Did the trial court err by ruling the Chergoskys had first priority to the money held by the trial court?

2. Did the trial court err by holding the agreement between Crosstown and the Chergoskys to be a contract for deed and Crosstown liable to the Chergoskys under that contract for deed?

3. Did the trial court err by piercing the corporate veil and holding Teien personally liable to the Chergoskys under the contract for deed?

## ANALYSIS

On appeal from summary judgment, this court reviews the record to determine (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its applications of law. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989). This court views the evidence in a light most favorable to the party against whom the summary judgment motion was granted. *Offerdahl v. University of Minnesota Hospitals and Clinics*, 426 N.W.2d 425, 427 (Minn.1988).

### I.

■ The Minnesota Recording Act states:

> Every conveyance of real estate shall be recorded * * * and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate * * * whose conveyance is first duly recorded * * *.

Minn.Stat. § 507.34 (1988). A subsequent purchaser in good faith (a bona fide purchaser) is someone who obtains an interest in real estate by giving consideration without actual, implied, or constructive notice of inconsistent outstanding rights of others to the property. *Miller v. Hennen*, 438 N.W.2d 366, 369 (Minn.1989). Thus, under the recording act, a bona fide purchaser, who records first, will take his interest in the real estate over the prior, yet unrecorded, interest in the real estate. *Id.* Likewise, a purchaser who has knowledge of a prior unrecorded interest is not a bona fide purchaser and is not entitled to the protection of the recording act. *Anderson v.*

---

1. In the priority dispute, the parties agree the money replaces the property.

*Graham Investment Co.,* 263 N.W.2d 382, 384 (Minn.1978).

A title free from outstanding claims and equities may be transferred in that condition. This is the underlying principle of the rule, applied in numerous cases, that *a purchaser from a bona fide purchaser succeeds to his grantor's rights as a bona fide purchaser, regardless of whether he himself is one.* As it is sometimes said, once a title is cleared it remains clear.

*Henschke v. Christian,* 228 Minn. 142, 147, 36 N.W.2d 547, 550 (1949) (citations omitted) (emphasis added); *see also Aldrich v. Wilson,* 265 Minn. 150, 159, 120 N.W.2d 849, 855 (1963) (the plaintiffs were entitled to the same protection in holding and enjoying the property as was their grantor).

Without question, if Metropolitan Bank had not assigned its mortgage to Griffith, it would take priority over the Chergoskys' contract for deed. Although the Chergoskys signed the contract for deed almost two years before the bank obtained the mortgage, the bank recorded its mortgage almost seven years before the Chergoskys recorded their contract for deed. There is no evidence that the bank had any knowledge of the Chergoskys' contract for deed. Therefore, Metropolitan Bank was a bona fide purchaser under the recording act, and would be protected from the Chergoskys' prior unrecorded interest. Most importantly, under *Henschke,* Griffith is sheltered by the bank's priority over both the Chergoskys and KDM. Thus, although Griffith had knowledge of the Chergoskys' contract for deed, Griffith has priority. Therefore, we reverse the trial court's summary judgment in favor of the Chergoskys, and remand to the trial court with directions to enter summary judgment in favor of Griffith. Because of his priority, Griffith is entitled to the money held by the trial court.

## II.

While a document may be termed a contract for deed, if the real nature of the transaction is that of a loan, secured by property, the transaction may be treated as an equitable mortgage. *First National Bank of St. Paul v. Ramier,* 311 N.W.2d 502, 503 (Minn.1981). The intent of the parties to a transaction determines whether the transaction is a contract for deed or an equitable mortgage. *Mitteness v. Dahl,* 351 N.W.2d 685, 687 (Minn.App.1984).

Furthermore, "a deed absolute in form is presumed to be, and will be treated as, a conveyance unless *both* parties in fact intended a loan transaction with the deed as security only." *Ministers Life & Casualty Union v. Franklin Park Towers Corp.,* 307 Minn. 134, 137–38, 239 N.W.2d 207, 210 (1976) (emphasis added).

Testimony as to the intention of one party only is insufficient as proof that a transaction in form a sale was in fact an equitable mortgage; it must appear that *both* parties so intended.

*Id.* at 138, 239 N.W.2d at 210 (emphasis in original).

The agreement between the Chergoskys and Crosstown, on its face, is a contract for deed. Crosstown and Teien, however, claim the true intention of the parties was to enter into a loan for $50,000, with the property serving as security for that loan. Teien testified in his deposition it was *his* intention that the agreement between the Chergoskys and Crosstown be a loan. However, Teien merely testified as to his own intentions. Because it must be the intention of both parties to enter into a mortgage before the terms of the contract for deed will be ignored, and because there is no evidence as to the Chergoskys' intent, there is insufficient evidence to find the agreement was an equitable mortgage. We agree with the trial court's determination that the agreement between the Chergoskys and Crosstown was a contract for deed and we affirm the trial court's summary judgment in favor of the Chergoskys and against Crosstown.

## III.

Courts have also relied upon the "alter-ego" or "instrumentality" theory to impose liability on an individual shareholder. * * * Factors considered significant in the determination include: insufficient

capitalization for purposes of corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely facade for individual dealings.

Disregard of the corporate entity requires not only that a number of these factors be present, but also that there be an element of injustice or fundamental unfairness.

*Victoria Elevator Co. of Minneapolis v. Meriden Grain Co., Inc.,* 283 N.W.2d 509, 512 (Minn.1979) (citations omitted).

■ Thus, there is a two-prong test to determine whether the corporate veil should be pierced. Under the first part of the test, focusing on the shareholder's relationship to the corporation, eight factors are considered. Under the second prong of the test, focusing on the relationship of the plaintiff to the corporation, an element of injustice or fundamental unfairness is necessary. "To satisfy [the second prong] of the test, 'proof of strict common law fraud is not required, but, rather, evidence that the corporate entity has been operated as a constructive fraud or in an unjust manner must be presented.'" *White v. Jorgenson,* 322 N.W.2d 607, 608 (Minn.1982) (quoting *West Concord Conservation Club v. Chilson,* 306 N.W.2d 893, 898 n. 3 (Minn.1981)).

■ The trial court correctly pierced the corporate veil. Teien admitted he failed to follow the corporate formalities, never issued stock, had no other officers or directors, and had no corporate checking or other bank accounts. Crosstown never filed a tax return. All the corporate money was put into Teien's own personal checking account. Teien obtained a personal loan from Summit Bank, yet he used Crosstown's property as security. Further, Teien sold Griffith 70% of the assets of the corporation to satisfy his own personal debt to Griffith.

Moreover, when Crosstown and the Chergoskys entered into the contract for deed, it was done because, as Teien stated in his deposition, Crosstown was unable to meet its obligations, and the income from Crosstown's sole asset, the rent money from Northwestern Bell, was insufficient to pay all corporate debts. Thus, a number of the factors of the first prong of the *Victoria Elevator* test, are present.

Teien also operated Crosstown in an unjust manner. The trial court said "[a]fter this history of blurred distinctions between Teien and the corporation, it is not fair to allow Teien to now use the corporate structure as a shield against claims Crosstown cannot satisfy." Because Northwestern Bell purchased the property from Crosstown, Crosstown was required to repay the Chergoskys under the contract for deed. Yet, Crosstown never could have done this because it never had the assets to do so. It would be unfair to allow Teien, who used Crosstown as an alter-ego corporation, to shield himself from liability under the contract for deed. Thus, the trial court's decision to pierce the corporate veil and hold both Teien and Crosstown liable to the Chergoskys under the contract for deed is affirmed.

## DECISION

The trial court erred by holding the Chergoskys had first priority to the money held by the trial court. Because he is sheltered by the bank's priority, Griffith is entitled to the money. However, we affirm the trial court's decision finding the agreement between the Chergoskys and Crosstown to be a contract for deed and holding both Crosstown and Teien liable to the Chergoskys under that contract for deed.

Affirmed in part, reversed in part, and remanded.