Jayne FRASER, Respondent,

v.

James FRASER, Respondent,

Gerald Fraser, individually and as Trustee of the Gerald R. Fraser Revocable Intervivos Trust Agreement, Appellant.

No. A04–2138.

Court of Appeals of Minnesota.

Aug. 16, 2005.

Review Denied Oct. 18, 2005.

Kenneth Hertz, Hertz Law Offices, P.A., Columbia Heights, MN, for respondent Jayne Fraser.

James Fraser, New Hope, MN, pro se respondent James Fraser.

Paul W. Chamberlain, Chamberlain Law Firm, Wayzata, MN, for appellant Gerald Fraser.

Considered and decided by MINGE, Presiding Judge; LANSING, Judge; and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

Appellant father challenges the decision of the district court construing the agreement between him and respondents as an equitable mortgage rather than a contract for deed. The parties in this case have appeared before this court in the past regarding this same issue. In 2002, the district court granted summary judgment in favor of respondent wife on her claim that father had an equitable mortgage and hence that father's statutory cancellation of the contract for deed was not effective. Father appealed, and we remanded for the district court to resolve the question of the intent of the parties to the conveyance. After a court trial, the district court once again held that father held an equitable mortgage on the property, concluding that respondents conveyed title to the property as security for a loan from appellant. Father moved for amended findings or a new trial. The district court denied the motion, and father appealed from the judgment. Because the district court did not clearly err, we affirm.

## FACTS

Respondents James Fraser (husband) and Jayne Fraser (wife) (collectively, the

couple) sought to buy a home in Big Lake, but were unable to obtain financing due to credit problems. According to husband, his father, appellant Gerald Fraser (father), a real-estate broker, then agreed "that if [husband] could find a house that [husband] could afford[,] [father] would help [husband] acquire it by ... purchasing it and selling it to [husband] in a contract for deed."

The couple subsequently found property in which they were interested. The property was encumbered by substantial federal- and state-tax liens. Husband, an accountant, negotiated settlements with the IRS and the State of Minnesota to clear the title. The couple entered into a purchase agreement with the sellers to buy the property for $55,250, a figure that included a $6,250 credit for husband's services in negotiating the lien settlements.

Father then transferred money to husband. The couple used the funds to get cashier's checks to pay the tax liens. At the closing, the sellers quitclaimed the property to husband and wife, who quitclaimed it to father. Father, in turn, sold the property back to husband and wife on a contract for deed. The couple was represented by counsel during these dealings, but father was not.

Husband later filed for divorce and moved from the property. Under the temporary order, wife was awarded use of the home, and husband was ordered to make the contract-for-deed payments. When husband failed to make the payments, father attempted to serve husband and wife with a notice of cancellation of the contract for deed. The district court initially joined father as a party to the couple's dissolution proceeding and enjoined him from canceling the contract for deed, but later reversed itself and vacated the injunction, ruling that it had lacked jurisdiction over father and that the injunction against can-

celing the contract for deed had been incorrectly issued. Wife then filed a separate action against husband and father, asserting equitable defenses to the contract-for-deed cancellation, including that father's interest in the house was an equitable mortgage. On reconsideration in the dissolution action, the district court concluded that, because the earlier injunction was void for lack of jurisdiction, the period to cure the contract-for-deed default had expired.

Father then filed an eviction action against wife and obtained a writ of recovery for the property, which was stayed to allow wife to appeal. Wife separately appealed the eviction and the dissolution order vacating the injunction. This court consolidated the appeals and remanded portions of the eviction for the district court to address wife's claims of defective service of the notice of cancellation and the propriety of addressing wife's equitable defenses in the eviction action. *Fraser v. Fraser*, 642 N.W.2d 34, 41 (Minn.App.2002) (*"Fraser I "*). If appropriate, the district court was also to address the equitable defenses. *Id.*

On remand in the eviction proceeding, the district court rejected wife's service arguments, did not address wife's equitable claims, and ruled that father was entitled to immediate possession of the property. In the meantime, the parties made cross-motions for summary judgment in the wife's suit that alleged equitable defenses to the contract-for-deed cancellation. The district court granted summary judgment in favor of wife on her claim that father had an equitable mortgage and, hence, that father's statutory cancellation of the contract for deed was ineffective.

On appeal, this court noted that "a deed absolute on its face" will be held to be an equitable mortgage only if it "appear[s] that both parties so intended." *Fraser v.*

*Fraser,* No. C3–02–2219, 2003 WL 21743707, at *3 (Minn.App. July 29, 2003) ("*Fraser II* ") (emphasis omitted) (quoting *Ministers Life & Cas. Union v. Franklin Park Towers Corp.,* 307 Minn. 134, 140, 239 N.W.2d 207, 211 (1976)). "Because the record [was] unclear regarding the intent of the parties to the conveyance, we remand[ed] for the district court to resolve the intent-related questions." *Fraser II,* 2003 WL 21743707, at *4. The district court was, to the extent required, to construe any documents necessary for the resolution of the case. *Id.*

On remand, the district court once again determined that father had an equitable mortgage on the property, concluding that "[t]he facts surrounding the transaction at issue provide[d] clear and convincing evidence that the parties intended a security agreement rather than an absolute conveyance." In support of its decision, the district court noted that "[a]ll of the parties at various times characterized the transfer of funds as a loan" and that husband and wife held title to the property prior to conveying it to father "without further consideration." The district court also concluded that the value of the property conveyed exceeded the amount of money transferred to husband by father, a situation "favoring the finding of an equitable mortgage." This appeal follows.

## ISSUES

1. Did the district court err by holding that the transaction created an equitable mortgage?

2. Did the district court err by concluding that there was no agency relationship between father and husband and wife?

3. Is wife equitably estopped from claiming relief in the form of an equitable mortgage?

## ANALYSIS

A district court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the [district] court to judge the credibility of the witnesses." Minn. R. Civ. P. 52.01. We defer to the district court's assessment of credibility. *See Sigurdson v. Isanti County,* 386 N.W.2d 715, 721 (Minn.1986) (stating that "[a]n appellate court cannot judge the credibility of a witness or the weight, if any, to be given to testimony"). A finding is clearly erroneous only if it is "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Randall v. N. Milk Prods., Inc.,* 519 N.W.2d 456, 458 (Minn.App.1994) (quotation omitted).

## I. Equitable Mortgage

In general,

when the real nature of the transaction between the parties is that of a loan, advanced upon the security of realty granted to the party making the loan, it may be treated as an equitable mortgage, without regard to the actual form of the instrument of conveyance. It is within the province of the [district] court to determine, by looking beyond that form, the actual character of the transaction. An equitable mortgage is created when the parties to the transaction intended it to be essentially a security transaction.

*First Nat'l Bank of St. Paul v. Ramier,* 311 N.W.2d 502, 503 (Minn.1981) (citations omitted). "[A] deed absolute in form is presumed to be, and will be treated as, a conveyance unless both parties in fact *intended a loan transaction* with the deed as security only." *Ministers Life & Cas. Union v. Franklin Park Towers Corp.,* 307

Minn. 134, 137–38, 239 N.W.2d 207, 210 (1976) (emphasis added).

> [B]efore a court will hold a deed absolute on its face to be an equitable mortgage, it must appear that *both* parties so intended, ... *even if one party actually intended to enter into a mortgage agreement, unless the other party had the same intention, the transaction should not be construed to be an equitable mortgage.*

*Id.* at 140, 239 N.W.2d at 211 (second emphasis added). The relevant intention is that of the parties at the time of conveyance. *St. Paul Mercury Indem. Co. v. Lyell,* 216 Minn. 7, 11, 11 N.W.2d 491, 494 (1943). "[I]ntention is to be ascertained by the written memorials of the transaction and the attendant facts and circumstances." *Westberg v. Wilson,* 185 Minn. 307, 309, 241 N.W. 315, 316 (1932).

 Father contends that the district court erred in finding that the parties intended to enter into an equitable mortgage, arguing that both the relevant documents and the testimony of the parties demonstrate an unequivocal intention to enter into a contract for deed.[1] Specifically, father cites his testimony that he "[a]bsolutely" did not intend to enter into a mortgage and husband's testimony that "[a] loan was never discussed," as well as a letter from father to the couple's attorney stating that he had "no intention of granting [the couple] a mortgage." Father also maintains that wife never testified regarding her intent. Further, father points to supplemental language added to the contract for deed, which states that "[the][c]ontract shall not be construed and interpreted as a title transaction and shall not be construed and interpreted as an 'equitable mortgage' as that term is defined by Minnesota law."

But, as the district court noted, there was also evidence supporting a conclusion that the parties intended to enter into an equitable mortgage.[2] The district court

1. Structuring a real-estate transaction as a contract for deed or a mortgage carries with it substantial consequences. One remedy available to a seller upon the buyer's defaulting under the terms of the contract for deed is the seller's ability to cancel the contract. Depending on when they were executed and the proportion of the purchase price paid by the purchaser, contracts for deed may be terminated in 30–90 days after notice of default. Minn.Stat. § 559.21 (2004). Once statutory notice has been served and cancellation effected, all rights between the parties under a contract for deed are terminated. *West v. Walker,* 181 Minn. 169, 171, 231 N.W. 826, 827 (1930).

   In contrast, a mortgage must be foreclosed, either by advertisement or by action. As we have stated:

   > A foreclosure by advertisement takes place without recourse to the courts, and is a proceeding *in pais, ex parte,* and *in rem.* A foreclosure by action requires a judicial decree and approval of sale and is an *in personam* proceeding, although it is in the nature of a proceeding *in rem* since its purpose is to enforce a lien on the mortgaged property.

   *Norwest Bank Hastings Nat'l Assoc. v. Franzmeier,* 355 N.W.2d 431, 433 (Minn.App.1984) (citation omitted). After foreclosure, depending upon the date of the mortgage and the nature of the real estate, a mortgagor has 6–12 months in which to redeem the property. Minn.Stat. § 580.23 (2004).

   The financial effects of cancellation versus foreclosure also differ dramatically.

   > A statutory cancellation of a contract for deed results in the vendee's forfeiture of all payments made and restoration of full legal and equitable title in the property to the vendor. This result is different from that in a mortgage foreclosure sale, where the defaulting party may receive proceeds of a mortgage foreclosure sale above the amount owed on the property.

   *Shields v. Goldetsky (In re Butler),* 552 N.W.2d 226, 230 (Minn.1996).

2. In *Fraser II,* we noted the presence of conflicting evidence regarding intent. 2003 WL 21743707, at *3. It was for the purpose of

pointed to testimony from all of the parties characterizing the fund transfer as a loan. In an affidavit, husband stated that

> [father] *loaned* us $56,000.00 to purchase the house.... The final result was that we purchased a home and [father] financed the purchase. [Father] *gave us $56,000.00, and in return he received fee ownership of the property in question* and gave us a [c]ontract for [d]eed so that the money he loaned us was secure.

(Emphasis added.) Husband also testified at trial that "father financed the house and the financing vehicle was a contract for deed."

Father likewise testified that he "certainly did lend $56,000" and that he "lent [the] money only on security of the house." Even father's denial evinces a loan agreement:

> Q: Isn't it true ... that you lent the monies to [husband] and [wife] so that they could purchase the house—
>
> A: I did not lend money to anyone. I gave the money to [husband] to buy the house *which he was to pay back in the form of a contract for deed.*

(Emphasis added.)

Moreover, despite father's contention to the contrary, the record includes testimony from wife that goes to the question of intent.

> Q: And what was your understanding as to [father's] involvement in this transaction?

> A: [Father] was always a lender. He was never anything more.

The record indicates that father, a former real-estate agent and broker, knew and accepted the potential consequences of the financing arrangement. On May 5, 1997, father sent a letter to Steven Thorson, the attorney for the couple, about financing the purchase of the property, stating, "I agreed to finance the house for [husband] on the basis that I would be the owner and sell the property to him on a contract-for-deed. I have no intention of granting [the couple] a mortgage." The next day, Thorson responded:

> [F]rom your perspective, a contract for deed is the worst way for you to secure your interest in the property. The reason for this is that, if you insist on a contract for deed, [husband] and [wife] are going to need to deed the property to you immediately after their closing with [sellers] and then sign a recordable contract for deed with you. *The net result, in spite of the words "contract for deed" appearing on the document, is that you will have an equitable mortgage under Minnesota law, not a contract.*
>
> To get a good contract for deed, you would need to be the purchaser directly from [sellers]. But, we cannot do that here because part of the purchase price is being paid with personal-services-rendered from [husband].[3]

(Emphasis added.) Father subsequently wrote back, noting that he had received

---

resolving this issue that we remanded. *Id.* at *4.

**3.** Father contends that the district court erred in considering this letter because it was admitted with the provision that it was not to prove the truth of the matter asserted under Minn. R. Evid. 801. But contrary to father's assertion, the district court did not rely on this letter to establish that an equitable mort-

gage existed. Rather, the district court used the letter to establish that father had been informed of Thorson's opinion that the structure of the transaction would create an equitable mortgage. The district court further noted that father then responded to Thorson, acknowledging Thorson's characterization and indicating that father understood the consequences.

Thorson's letter and acknowledging that neither Thorson nor Thorson's firm represented him in the matter. Father then stated:

> I have consulted with my own lawyer [and] I hereby waive any requirement to consult with [my] own lawyer regarding my request to *obtain a contract for deed as the security instrument securing a loan* to be made to [husband] and [ ] wife for the purchase of real property. I further acknowledge that you have characterized the security arrangement as one which will create an equitable mortgage and that you asked me to consider the consequences.
>
> I understand that [husband] and [wife] will receive a deed from [sellers], and that they will deed the property to me, and that I will receive a contract for deed from [husband] and [wife]. This is my request. *I understand the consequences.*

(Emphasis added.)

The record thus contains evidence that reasonably supports the district court's finding regarding the intent of the parties. On this record, we cannot say that the district court clearly erred in finding that the parties intended to enter into an equitable mortgage. *Randall,* 519 N.W.2d at 458.

▮ Father also argues that there can be no equitable mortgage in this case because the couple never held title to the property. He notes that "[i]f one never owned the property and was only trying to purchase the property in the first instance ... equity does not require she be prevented from purchasing property on a contract for deed." As we noted in *Miller v. Anderson,* 394 N.W.2d 279 (Minn.App.

1986), "[t]itle to the property involved in an equitable mortgage starts with the borrower and passes to the lender as security for the money borrowed." *Id.* at 283. Where, in contrast, title originates with the lender, no equitable mortgage is created. *Id.*

Father contends that such is the situation here. He asserts that "[h]ad [husband] and [wife] owned the home and pledged it to [father] for money they needed, an equitable mortgage might apply. Yet that never happened here. [The couple] *owned nothing and had nothing to pledge.*" (Emphasis added.)

But this is a plain misstatement of fact. It is uncontested that the sellers quitclaimed the property to the couple, who then quitclaimed it to father. During the interim, husband and wife owned the property. That they owned it for only a short time is immaterial. Father has not pointed to any authority suggesting that, in order to create an equitable mortgage, there is a minimum time for which borrowers must hold property prior to pledging it as security for a loan.

Father suggests that because the documents were executed at the same time, they should be "construed as forming one contract, rather than separate and distinct contracts."[4] In support, he cites *Farrell v. Johnson,* 442 N.W.2d 805 (Minn.App. 1989), which states, "Generally, instruments executed at the same time, by the same parties, relating to the same transaction will be considered and construed together, since they are, in the eyes of the law, one contract or instrument." *Id.* at 806.

---

**4.** The district court likewise addressed father's argument that "the 'unified closing' provided no break in the chain of title and that [the couple] had no interest in the prop-

erty to transfer as security," noting that this argument "ignores the reality of the transaction" and is "contrary to the evidence and the law."

But *Farrell* is inapposite—the instruments in question neither involved the "same parties" nor related to the "same transaction." Here, two separate transactions occurred. The parties to the first transaction—transferring title to the couple—were husband, wife, and the sellers. The parties to the second transaction—transferring title to father—were husband, wife, and father. Father was not a party to the first transaction, nor were the sellers parties to the second.

Although the two transfers occurred at the same closing, they were separate transactions. Accordingly, the district court did not err in concluding that an equitable mortgage existed when the couple held title to the property and then conveyed title to father as security for a loan. *Cf. Miller*, 394 N.W.2d at 283 (noting that, in an equitable mortgage, title passes from the borrower to the lender as security).

At oral argument, father noted that if the sellers had conveyed the property directly to him, without title passing through the couple, there would be no question that the conveyance in question was a contract for deed. We agree that, had the parties handled the transaction differently, the outcome would also be different. But we must consider the events as they actually occurred, not as they might have transpired. For whatever reason, the sellers declined to sell the property to father. Nonetheless, he chose to continue the transaction, rather than withdrawing. In a letter to the couple's attorney, father indicated that he understood the consequences of that decision. He cannot now avoid those consequences by positing alternative scenarios.

Father also challenges the district court's finding that the value of the property exceeded the contract price and contends that, even if this were the case, it has no bearing on the question of the existence of an equitable mortgage. At trial, wife testified that the original listing price for the home was $99,000. The district court found, based on the evidence at trial, that the face value of the federal-and state-tax liens on the property was $85,000 to $90,000. Father affirms that the couple ultimately paid less than $50,000 to satisfy the liens on the property. The purchase agreement that husband and wife signed with the sellers was for $55,250 plus credit for husband's services in negotiating settlement of the liens. Thus, there is evidence from which the district court could reasonably conclude that the value of the property exceeded the contract price.

■ While not determinative of the issue, when considering whether an equitable mortgage was intended, "[a district] court could take into consideration the fact that the value of the property was greater than the consideration given for the deed." *Gagne v. Hoban*, 280 Minn. 475, 480, 159 N.W.2d 896, 900 (1968). Accordingly, the district court did not err in so doing.

## II. Agency

■ Father next argues that husband was acting as his agent in purchasing the property and contends that the district court erred by concluding that no agency relationship existed. In *Fraser II*, we

> reject[ed] this argument because it assumes that, in acquiring the property from the sellers, husband and wife were, essentially, agents of father through whom the property passed on its way to father. The purchase agreement, however, (a) was between the sellers and husband and wife; (b) does not state that husband and wife were agents of father or otherwise acting on father's behalf; and (c) states that neither the sellers nor the buyers could convey their

interests under the purchase agreement without the other side's consent. *Thus, if husband and wife were only agents for father, they either entered the agreement knowing that they were not the actual buyers and that father was or, after entering the purchase agreement as legitimate purchasers, they improperly transferred their rights under the agreement to father without the sellers' consent.* Also, part of the purchase price was "paid" when the sellers gave husband credit for CPA work he had done for the sellers. Because this credit made the sale possible in the form that it occurred, we cannot say on this record that husband was acting in a mere representative capacity.

2003 WL 21743707, at *3 (emphasis added).

█ This determination is thus the law of the case and will not be re-examined here. *Brezinka v. Bystrom Bros., Inc.*, 403 N.W.2d 841, 843 (Minn.1987).

The doctrine of law of the case is distinct from the doctrines of res judicata and stare decisis, even though similar underlying policy considerations are involved. Law of the case applies most commonly to situations where an appellate court has passed on a legal question and remanded to the court below for further proceedings. The legal question thus determined by the appellate court will not be re-examined on a second appeal of the same case.

*Id.*

## III. Equitable Estoppel

█ Finally, father argues that wife should be equitably estopped from asserting the existence of an equitable mortgage because she slept on her rights and came before the court with unclean hands. Specifically, father contends that wife should have been denied equitable relief because

she did not raise the equitable mortgage issue until the contract for deed had already been cancelled. Although the district court did not explicitly address the equitable-estoppel issue, it implicitly rejected father's argument by finding the existence of an equitable mortgage.

█ Father's argument is without merit. It is well settled that an equitable-mortgage defense to a contract-for-deed cancellation may be asserted after the redemption period has expired. *See Albright v. Henry*, 285 Minn. 452, 462–63, 174 N.W.2d 106, 112 (1970) (noting that because cancellation does not effect a valid foreclosure of an equitable mortgage, the contention that an equitable-mortgage claim must be asserted within the contract-for-deed redemption period is "entirely without authority or merit"); *Coddon v. Youngkrantz*, 562 N.W.2d 39, 44 (Minn.App.1997) (holding that equitable defenses to a contract for deed may be asserted despite the expiration of the redemption period), *review denied* (Minn. July 10, 1997). Moreover, we concluded in *Fraser I* that wife could raise the equitable-mortgage defense in a proper proceeding, such as the current action. 642 N.W.2d at 39–40. Consequently, the district court did not err in implicitly rejecting father's equitable-estoppel argument.

## DECISION

Because title to the property in this case passed first from the original seller to the borrower and subsequently passed from the borrower to the lender as security on a contract for deed, the possibility arose that an equitable mortgage had been created. The existence of an equitable mortgage depends upon the intent of the parties at the time of conveyance. The record contains evidence from which the district court could reasonably find that the parties intended to enter into an equitable

mortgage. An equitable-mortgage defense need not be asserted within a contract-for-deed redemption period. We therefore affirm the district court's decision.

**Affirmed.**

MINGE, Judge (concurring specially).

I concur in the opinion of the court and add the following analysis. Parties are generally accorded the right to contract between themselves with respect to their business affairs and to enforce their contracts according to their terms. *Pollock–Halvarson v. McGuire*, 576 N.W.2d 451, 454–55 (Minn.App.1998), *review denied* (Minn. May 28, 1998). Similarly, real-estate documents are commonly recorded and third parties rely on those documents. *Cf. In re Bernard*, 534 N.W.2d 272, 275 (Minn.1995) (noting that "[t]he vast number of people who rely on the real[-]estate recording system as a valid and efficient process rely on the genuineness of the documents recorded thereunder"). Predictability and enforceability of contracts is important in our legal system. This principle is subject to limitations that reflect important public policies. Important among these limitations is the doctrine of equitable mortgages. This doctrine is designed to protect borrowers from over-reaching by lenders who seek to use absolute deeds to avoid the delay and expense of a foreclosure and to obtain the borrower's residual equity in real estate. *See* Restatement (Third) of Property: Mortgages § 3.2, cmt. a (1997) (discussing the courts' use of equitable-mortgage doctrine to counter attempts by lenders to avoid mortgagors' "equity of redemption").

In Minnesota, the contract for deed is a well established, specifically recognized arrangement for financing the purchase of real estate. *In re Butler*, 552 N.W.2d 226, 230 (Minn.1996). Cancellation of such contracts must follow certain statutory procedures. Minn.Stat. § 559.21 (2004). These accord the buyer notice and opportunity for cure. Also, with respect to family farmers purchasing farmland, the statute provides a right to mediation. Minn.Stat. § 559.209 (2004).[5]

One of the issues before us is whether the parties have the flexibility to structure this transaction as a contract for deed. There is no dispute that the father intended to finance the purchase of the property. The terms of the contract are not onerous; it uses the uniform conveyancing blank format. In fact, if this transaction is classified as a mortgage, the parties agree that the same terms would be used and that the entire balloon payment is due. But the statutory redemption period for this contract is short compared to the redemption period that would be required if the transaction had been set up as a mortgage with foreclosure by advertisement. *Compare* Minn.Stat. § 559.21 *with* Minn.Stat. § 580.23 (2004). In addition, given the evidence of the actual value of the land, the wife's apparent financial circumstances and likely title complications, refinancing or sale may be difficult and a quick contract-for-deed cancellation exposes her to a substantial risk of forfeiting all equity while the public sale and redemption process in a mortgage foreclosure minimizes that risk. *See Butler*, 552 N.W.2d at 230 (stating that in contrast to a mortgage foreclosure sale, cancellation of a contract for deed restores full ownership to vendor and terminates all rights between the parties to the contract for deed).

---

5. This section has been repealed as of June 30, 2005. 2001 Minn. Laws 1st Spec. Sess. ch. 1, art 2 § 25.

Furthermore, as this court's opinion demonstrates, the transaction is not a good fit for a contract for deed. The original seller is not financing the sale. Instead, the buyers served as a conduit to transfer nominal title to father to give him the status of seller and to then sell the premises back to the buyers on what the parties agreed would be a "contract for deed." This unusual combination of transactions appears in the real-estate record and should be adequate to place third parties on notice that the arrangement is unusual.

On balance, I concur in the result. The district court did not err or abuse its discretion in treating the transaction as an equitable mortgage. This is a heavily regulated area of real-estate financing. It is not a commercial transaction. Although the buyers had counsel, they were economically stressed. The father was not the real seller. The nominal price did not reflect the son's contribution to the purchase or the apparent fair market value of the property. The father knew the risks involved. The public record discloses that the parties deeded the property in a fashion that is inconsistent with the normal contract for deed transaction. Thus, predictability and stability in contractual arrangements is not sacrificed by the result reached in this case. Probably the most difficult aspect of the result is that the flexibility of financing is denied. This may be a detriment and may preclude some transactions that are not so unfair as to require application of the equitable-mortgage doctrine. But given the debtor's rights in real estate transactions, this limitation on flexibility reflects a deeply-rooted policy in this state.