Elsie R. HARTER, as Trustee Under Trust Agreement Regarding Foreclosure Dated as of July 1, 1986, Respondent,

v.

Voight O. LENMARK and Estate of Catherine S. Lenmark, deceased, Petitioners, Appellants,

First Minnesota Savings Bank, F.S.B., Defendant.

No. C3–88–401.

Supreme Court of Minnesota.

Aug. 4, 1989.

Rehearing Denied Sept. 15, 1989.

Robert H. Torgerson, Luther, Ballenthin & Carruthers, Minneapolis, for petitioners, appellants.

Phillip Gainsley, Moss & Barnett, Minneapolis, and David W. Larson, Steven C. Opheim, Dudley & Smith, St. Paul, for respondent.

COYNE, Justice.

On the petition of Voight Lenmark, individually and as the personal representative of the estate of Catherine Lenmark, we review a court of appeals decision affirming summary judgment in favor of the respondent Elsie Harter, as trustee, in this action to foreclose mortgages and obtain deficiency judgments. 428 N.W.2d 596. The trial court determined that demand letters addressed to Voight Lenmark individually were sufficient to put him, in his capacity as personal representative, on notice of the demand for payment from Catherine's estate. The trial court also entered summary judgment for Harter on Lenmark's claim that the time for repayment of the debts was extended by oral agreement, foreclosing the mortgages and awarding Harter a deficiency judgment in the event proceeds of the foreclosure sale are insufficient to satisfy the amounts due. We reverse in part and affirm in part.

Voight Lenmark and his now deceased spouse Catherine were the owners of commercial real property located in St. Louis Park, Minnesota encumbered by a first mortgage in favor of defendant First Minnesota Savings Bank executed on June 15, 1984 in the amount of $365,000. Presumably to obtain funds to finance other development projects in which the Lenmarks were interested, Voight contacted his long-time business and social acquaintance Kenneth Harter. What resulted during the period from June 18, 1984 to August 30, 1985 was a series of financial transactions which gave rise to these proceedings.

On June 18, 1984, Harter lent the Lenmarks $150,000 at 17% annual interest, securing Voight and Catherine's promissory note by a mortgage against the St. Louis Park property in favor of Harter's company, SWE Investments, Inc. A second note with virtually identical terms, also secured by a mortgage against the same property, was executed on September 10, 1984. The aggregate amount of the Harter loans, $300,000, was subject to monthly interest payments totalling approximately $4,250. The record discloses that each of the original notes was of short duration, contemplating repayment of the June 1984 note by April 1985 and the September 1984 note by July 1985. However, neither of the obligations was satisfied when the notes became due and payable and each instead was "rolled over" into a new note containing identical terms and thereby extending the respective due dates by nine months. The first, intended to supersede the June 18, 1984 note, was executed on April 17, 1985 by both Voight and Catherine, who also gave SWE Investments, Inc., another mortgage on the St. Louis Park property.[1] However, Catherine died prior to the execution of the second note, which was designed to substitute for that of September 10, 1984 and, accordingly, Voight alone executed it on August 30, 1985. At the same time Voight executed a new mortgage in favor of Kenneth Harter.

After the August 1985 execution of the final note and mortgage, Catherine's will was admitted to probate in September 1985. The requisite statutory notice of presentment of claims by creditors was provided by the probate court on Septem-

---

1. The mortgages executed on June 18, 1984, September 10, 1984, and April 17, 1985 were all in favor of Harter's company, SWE Investments, Inc. On June 27, 1985, Harter assigned SWE's mortgagee's interests to James Affolter, the trustee for two separate trusts established by Harter. Following Harter's death, Affolter and the beneficiaries of the two trusts assigned their interests and rights as mortgagee to Elsie Harter, the trustee under the foreclosure agreement made to pursue this lawsuit.

ber 17, 1985; consequently, the four-month claim period expired on January 17, 1986. Kenneth Harter died in November 1985 and on November 15, 1985 the attorney for his estate contacted Voight in writing, informing him that the two outstanding notes would be due and payable as provided by their written terms, on December 15, 1985 and March 1, 1986, respectively. A second letter dated December 17, 1985 again demanded payment in full of the first note. Not only were the notes not paid, but it is also significant that while Voight had continued to make timely monthly interest payments through November 1985, those payments ceased after Harter's death.

When the promissory notes remained unpaid, Elsie Harter, as trustee, commenced this foreclosure action against Voight individually and in his capacity as personal representative of Catherine's estate. Voight, in his answer filed individually and on behalf of the estate, alleged that the terms of the notes were subsequently orally modified to extend the repayment of the principal obligation to such time as the projects in which the monies were invested became profitable. He later sought to amend his answer to assert the statute of limitations defense with regard to Harter's failure to file a valid and timely claim against Catherine's estate. Ultimately, after a series of procedural determinations, the trial court awarded summary judgment on Harter's claims against Voight individually and against Catherine's estate in the amount of $427,686.63 representing the $300,000 principal, interest and attorney fees. It directed the sale of the property at a sheriff's sale with proceeds to be distributed; it further ordered that in the event the proceeds were insufficient to satisfy the indebtedness, a deficiency judgment was to be entered against both defendants, Voight individually and Catherine's estate. The court of appeals affirmed.

We first consider the liability of Catherine's estate. In this regard, we are compelled to observe that the record fails to conclusively establish whether, as Voight asserts, the St. Louis Park property was held in joint tenancy by Voight and Catherine as husband and wife. Had the record

so demonstrated, several questions presented regarding the estate's liability on the mortgages would be irrelevant to the ultimate determination because, upon Catherine's death, the property serving as security for the promissory notes would have devolved by operation of law upon the surviving joint tenant Voight and never passed into her estate.

■ Voight contends that any demand for payment under the promissory notes should have been asserted as a claim against Catherine's estate pursuant to Minn.Stat. § 524.3–803(a)(1) (1988). Harter claims that the two letters transmitted to Voight during the four-month claim period were sufficient to satisfy the statutory requirement. We disagree not only with that claim, but also with the attempt to rely upon and broaden our earlier decision in *Peterson v. Marston*, 362 N.W.2d 309 (Minn.1985).

In *Peterson*, where we found a sufficient claim against an estate in a letter sent by creditors of the deceased to the estate's counsel, requesting information on the preservation of a claim, we observed that "[w]hile it is important that the 4–month limit on filing of claims be strictly observed * * * it is not as important that the required manner of giving notice of a claim be strictly followed." *Id.* at 312. However, while *Peterson* recognized as sufficient a claim that contained no actual demand for payment, it was obvious that the creditors wrote to the attorney in his capacity as the legal representative for the estate and in response to the published notice. In the instant case, the two letters did not request or demand payment from the estate, but only from Voight individually. While it can be assumed that Voight, as personal representative of the estate, was aware of Catherine's participation and obligations under at least one of the notes, no claim or demand for payment from the estate was asserted. Moreover, there is no indication that the letters were written in response to the published notice to creditors and, instead, appear to have been prompted by Kenneth Harter's death. To assume that these two items of correspon-

■■■■■■■■■■■■■■■■■

dence put Voight on notice of a demand for payment from the estate would blur any distinction between his individual liability and that of the estate; accordingly, we must conclude that there was no claim for payment from the estate asserted in these documents.

■ Harter's trustee alternatively contends that no claim was required because section 524.3–803 specifically excepts mortgage enforcement proceedings from claim presentation requirements. While we agree that, by operation of statute, a mortgagee may proceed against property of the estate encumbered by a mortgage without the necessity of filing a claim, there is no statutory provision authorizing the entry of a deficiency judgment on a debt in the absence of the requisite claim. This noteholder is seeking a deficiency judgment by virtue of a debt evidenced by a promissory note, an instrument not within the purview of section 524.3–803(c)(1), and the failure to file a claim is dispositive. We therefore reverse the portion of the decision imposing liability upon the estate of Catherine Lenmark and vacate that portion of the judgment.

■ The second issue presented relates to Voight's claim that the trial court erred in rejecting his assertion that the time for repayment of the notes was modified by subsequent oral conversations with Ken Harter; Voight argued that the debt was not due for at least three to five years, while the trustee contended that the debt was past due and owing. In essence, Voight contends that, by operation of the alleged modification, he is not in default under the terms of the promissory notes and that, accordingly, foreclosure was premature. However, the terms of the mortgage allow acceleration of the note and foreclosure for failure to comply with any of the covenants and conditions contained therein in addition to that with regard to repayment of the principal. The note required monthly interest payments and Voight does not contend either that he continued to make those payments after Harter's death or that any modification agreement extended the time for paying interest.

Accordingly, he is in default in that regard. Moreover, the terms of the junior mortgages also required him to keep current the first mortgage held by defendant First Minnesota, and there is no assertion of a parol modification of this provision. Voight has defaulted on the first mortgage and First Minnesota has foreclosed. Even if Harter had agreed to extend the time for repayment of the principal to some future time, these defaults would entitle Harter's trustee to accelerate the notes and foreclose the mortgages. As a result, any subsequent modifications of the time for repayment of the principal are immaterial and summary judgment was not inappropriate.

Reversed in part and affirmed in part.