*In re* ESTATE OF DOUGLAS HARRISON LANE, Deceased (Shirley L. Lane, Ex'x, Petitioner-Appellee, v. Qik N EZ Properties, L.L.C., Respondent-Appellant).

Fourth District   No. 4—03—0506

Opinion filed December 18, 2003.—Rehearing denied March, 2004.

Patrick James Smith, of Delano Law Offices, P.C., of Springfield, for appellant.

Gregory P. Sgro, of Sgro & Hanrahan, L.L.P., of Springfield, for appellee.

JUSTICE COOK delivered the opinion of the court:

Respondent, Qik N EZ Properties, L.L.C. (Qik N EZ), appeals from the trial court's judgment dismissing its claim against the estate of Douglas Harrison Lane as untimely. We affirm.

On or about December 30, 1999, the decedent, Douglas Harrison Lane, and his wife, Shirley Lane, entered into an indemnification agreement with the Joel A. Schneider 1996 Trust. The indemnification agreement was later assigned to Qik N EZ. Mr. Lane died on April 20, 2002. On May 21, his will was admitted to probate, and Mrs. Lane was

appointed the executrix of the estate. Notice of the opening of the estate was properly published, first appearing on May 25. The publication gave notice that the period in which to make claims against the estate would expire six months from the date of first publication, *i.e.*, November 25, 2002. On December 16, Qik N EZ filed a claim against the estate in the circuit court. The estate filed a motion to dismiss the claim on December 18. The motion was denied, and an amended motion to dismiss was subsequently filed. The trial court granted the amended motion to dismiss the claim against the estate as untimely on March 7, 2003. Qik N EZ appeals this dismissal.

Qik N EZ argues that the December 16 filing of its claim in the circuit court was only a formality and that it had actually presented its claim against the estate in a series of letters beginning in May, well within the six-month statutory window to present claims against the estate. On May 6, 2002, counsel for Qik N EZ first wrote Mrs. Lane about the indemnification agreement. The letter was addressed to her personally and made no mention of either her husband or his estate except to note that he had signed the indemnification agreement along with her. On May 9, counsel for Mrs. Lane responded, making no mention of Mr. Lane except to note that he had signed the agreement also. On May 14, counsel for Mrs. Lane informed Qik N EZ that Mr. Lane had recently passed away, that a petition to open probate was being prepared, and, "[s]hould you wish to file a claim in that proceeding, please advise, and once probate has been opened, we will provide you with the case number." Qik N EZ did not directly respond to this invitation to file a claim in the probate proceeding. However, in its June 19 response, Qik N EZ did state, "[t]he Indemnification Agreement requires Shirley Lane and the Estate of Harrison Lane to clean up the fill that has been placed on the property." Also, in subsequent letters, Qik N EZ no longer referred to Mr. Lane as being a responsible party under the agreement but began to reference his estate instead. These references are the basis for Qik N EZ's contention that a claim was filed with the representative of the estate.

In dismissing the claim, the trial court found the correspondence relied upon by Qik N EZ to create a valid claim to be insufficient since said correspondence was to Mrs. Lane individually and not to her as the representative of the estate. We affirm.

■ First, under the Probate Act of 1975 (Act), a claim against the estate of a decedent may either be filed with the court, the representative of the estate, or both. 755 ILCS 5/18—1(a) (West 2002). The Act further provides "[e]very claim filed must be in writing and state sufficient information to notify the representative of the nature of the claim or other relief sought." 755 ILCS 5/18—2 (West 2002). The

courts have held that technical legal form is not required to present a valid claim. *Sheetz v. Morgan*, 98 Ill. App. 3d 794, 797, 424 N.E.2d 867, 868 (1981). However, the claim must still be sufficient to notify the representative of the nature of the claim.

In the instant case, the initial letter sent by Qik N EZ was addressed to Mrs. Lane in her individual capacity. Nothing indicates that the correspondence was also directed toward her husband, his estate, or her as executrix of his estate. When informed of Mr. Lane's death, Qik N EZ chose not to then file a claim with the court or to further inquire about the probate case, even though it was openly invited to do so by Mrs. Lane's counsel. Although not required by law, this would have clearly shown Qik N EZ's intentions to pursue a claim against the estate. Instead, Qik N EZ continued in the manner it had begun, which was to pursue the matter with Mrs. Lane individually, as if the opening of probate had no effect upon their dealings. We cannot say that one sentence in a letter stating that the indemnification agreement requires action by "Shirley Lane and the Estate of Harrison Lane" is sufficient information under the Act to notify the representative of the nature of the claim when previous correspondence had only referred to Mrs. Lane in her individual capacity as a codebtor. Language of this nature could be construed as doing nothing more than recognizing that an estate had been opened and Mrs. Lane's codebtor had changed as a result. We must look at the sufficiency of the letter to notify the representative of the estate of a claim at the time the letter was received; we may not use the benefit of hindsight.

Although the facts differ somewhat from the instant case, we find the reasoning employed by the court in *In re Estate of Beider*, 268 Ill. App. 3d 1094, 645 N.E.2d 553 (1994), to be applicable here. In *Beider*, the court held that letters addressed personally to the deceased rather than to his estate were insufficient to state a claim against the estate. In reaching its decision, the court first examined a Minnesota case, *Harter v. Lenmark*, 443 N.W.2d 537 (Minn. 1989). In *Harter*, the Minnesota court held that demand letters a creditor had sent to a husband in his individual capacity as a codebtor were insufficient to constitute a claim against his wife's estate, of which he was the executor. The *Harter* court noted:

> " '[T]he two letters did not request or demand payment from the estate, but only from [the estate's representative] individually. While it can be assumed that \*\*\* [the] personal representative \*\*\* was aware of [the decedent's] participation and obligations under at least one of the notes, no claim or demand for payment from the estate was asserted.' " *Beider*, 268 Ill. App. 3d at 1097, 645 N.E.2d at 555, quoting *Harter*, 443 N.W.2d at 539.

The ruling in *Harter* is basically that knowledge an administrator has of a potential claim against an estate is not enough; that for a claim to have any effect, it must clearly and intentionally be directed at the estate.

To supplement the decision in *Harter*, the *Beider* court also examined *State v. Griffin*, 171 Conn. 333, 370 A.2d 1301 (1976). In *Griffin*, the Connecticut court found a letter addressed to an individual, who had not yet been appointed administratrix, was sufficient to state a claim against the estate because the letter made it clear that there was an intention that the letter serve as notice to the future administratrix of the claim against the estate. The court said that the intent was apparent because the letter conveyed the exact amount of the claimed indebtedness, identified the creditor, stated an unequivocal intention to pursue the claim, and an expectation that the recipient would apply for letters of administration. *Beider*, 268 Ill. App. 3d at 1097-98, 645 N.E.2d at 555, citing *Griffin*, 171 Conn. at 338-39, 370 A.2d at 1304.

Essentially, by reading these two cases together, the court in *Beider* found that unless letters are addressed directly to the estate or to an administrator of the estate in his or her capacity as such, we cannot find that those letters state a claim against the estate. It is the intent to make a claim against an estate that is important, and as a rule, that intent must be clearly presented to the representative of the estate. *Harter* and *Griffin* outline the spectrum in which letters to a representative of an estate sufficiently show the intent necessary to state a claim. In *Griffin*, the letter clearly elucidated its intent to pursue a claim against the estate, even though the estate had not yet been opened. In *Harter*, the letter was not clear about its intent to pursue a claim against the estate, even though that was a reasonable inference that could have been made by the recipient. Although a letter need not include every detail found in the letter in *Griffin*, at the very least a letter must state an unequivocal intention to pursue a claim against the estate, and it must specify the grounds or basis for the claim, along with identifying the creditor.

In the instant case, the facts are much more similar to those in *Harter* than those in *Griffin*. Nothing in the letters to Mrs. Lane suggests that Qik N EZ was writing to her in her capacity as executrix of Mr. Lane's estate. There is no evidence that Qik N EZ even knew that Mrs. Lane was the personal representative of her husband's estate. On the contrary, the letters are addressed to her in her individual capacity, much like the situation in *Harter*. Although it may be a reasonable inference to make, we cannot equate a demand against Mrs. Lane as a codebtor with an intention to pursue a claim against

the estate over which she was executrix. There is no unequivocal intention to pursue a claim against the estate in Qik N EZ's letters to Mrs. Lane, and as such the trial court did not err in dismissing Qik N EZ's claim against the estate.

Affirmed.

TURNER and STEIGMANN, JJ., concur.