*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0106**

In the Matter of the Estate of: John Stanley LaSha, Deceased.

**Filed September 28, 2015
Affirmed in part, reversed in part, and remanded
Reyes, Judge**

Hennepin County District Court
File No. 27PAPR13308

John N. Bisanz, Jr., Henson & Efron, P.A., Minneapolis, Minnesota (for appellant)

Gregory J. Holly, Law Offices of Gregory J. Holly, Dellwood, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Rodenberg, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

In this probate appeal, appellant personal-representative Sharon Nordstrom challenges a district court order granting respondent Kenneth Welton's claim against the estate of decedent Peter LaSha. Appellant asserts that the district court erred by (1) determining that respondent owned a one-half interest in certain of the decedent's real property by virtue of a quitclaim deed; (2) granting a summary judgment that does not comply with the probate code; and (3) determining that the mortgage was unambiguous

and was supported by proper consideration.  We affirm in part, reverse in part, and remand.

## FACTS

Peter LaSha was the owner of real property (the Property) located in Minneapolis. In 1999, the Property was forfeited to Hennepin County for non-payment of real-estate taxes.  LaSha then entered into a contract with Hennepin County to repurchase the Property and repay his past-due taxes in the principal sum of approximately $25,000 plus interest.  Nearly one year later, LaSha was in default on his payments to Hennepin County.  Because he did not have the means to cure the default, he sought financial assistance from Michael Welton.

Michael agreed to assist LaSha with the aid of Michael's father, Kenneth Welton. (collectively, the Weltons).  During the year 2000, Michael and LaSha developed an agreement whereby Michael, with assistance from Kenneth, would provide a loan to LaSha for LaSha's past-due taxes, pay his future taxes and insurance, and pay for any ongoing repairs and improvements.  In November 2000, LaSha and Michael entered into an agreement (the Agreement) which called for a number of transactions to take place. First, Michael agreed to "loan LaSha funds" totaling $33,000 to pay off LaSha's contract with Hennepin County.  Kenneth advanced the funds to Michael who in turn advanced them to LaSha.  These transactions were evidenced by two contemporaneous promissory notes: one signed by Michael favoring Kenneth (Welton Note) and one signed by LaSha

2

favoring Michael (LaSha Note).[1] Both notes had identical terms which set a seven percent interest rate and stated that the loan would be due and payable in December 2010. The promissory notes were secured by a first mortgage (the Mortgage) on the Property, signed by LaSha and Michael as mortgagors, with Kenneth as mortgagee. In the second transaction called for by the Agreement, Michael would "provide funds" for future real-estate-tax payments, homeowners insurance, and the costs of repairs and improvements to the Property. In exchange, LaSha agreed to convey an undivided one-half interest in the Property to Michael. LaSha conveyed this interest to Michael via quitclaim deed in November 2000, on the same day that the Agreement was signed.

From 2000 forward, the Weltons paid all real-estate taxes and homeowner's insurance premiums on the Property. They also paid for various improvements and repairs to the Property. The amount of funds advanced by the Weltons, including the initial $33,000 loan, totaled approximately $164,000. LaSha died intestate in 2012. At the time of his death, LaSha had made no payments on his promissory note to Michael.

Kenneth and Michael both filed claims in probate court against LaSha's estate (the Estate). Nordstrom, the Estate's personal representative, rejected both claims because they were for the same amount. Shortly thereafter, Michael assigned his claim to Kenneth, and the Estate was notified that the Weltons were not seeking double recovery.

---

[1] Because the parties needed to move quickly to repurchase the Property, the notes and the related funds were executed in January 2000. This allowed LaSha to pay off the delinquent repurchase agreement with Hennepin County. The Property was deeded back to LaSha under a deed of conveyance which was recorded on February 15, 2000.

Pursuant to an agreement between the parties, the Property was sold, and the resulting $129,596.05 remains on deposit in escrow.

Because Nordstrom disallowed his claim, Kenneth filed a petition for allowance with the probate court. He thereafter moved for summary judgment, arguing that the Agreement, the LaSha Note and Welton Note, and the Mortgage were valid and enforceable contracts and that the Weltons' interests encumbered the entire value of the Property. Nordstrom opposed the motion and argued that summary judgment should be denied because (1) the deed was not a conveyance but rather an equitable mortgage; (2) the Estate is not liable for payments made in connection with the Property; and (3) the Mortgage lacked consideration and was ambiguous.

The district court granted Kenneth Welton's motion for summary judgment and ordered that (1) $64,798.03 plus accrued interest be released to Kenneth for Michael's one-half interest in the Property; (2) $64,185.73 plus a per diem interest at $6.33 per day be released to Kenneth in satisfaction of the principal $33,000 loan plus $31,185.73 in accrued interest; and (3) any remaining funds be paid to the Estate. Nordstrom subsequently moved for amended findings and the motion was denied. This appeal challenging the summary judgment award followed.

**D E C I S I O N**

A district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03; *see* Minn. Stat § 524.1-304(a)

4

(2014) (noting that generally the rules of civil procedure apply to probate proceedings). On appeal from summary judgment, we review de novo "whether there are any genuine issues of material fact and whether the district court erred in its application of the law." *STAR Centers, Inc. v. Faegre & Benson, L.L.P*., 644 N.W.2d 72, 76 (Minn. 2002). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *Id*. at 76-77.

**I.      The district court did not err in determining that Michael Welton owned one half of LaSha's property through a quitclaim deed.**

The parties first dispute how the transaction between the Weltons and LaSha should be interpreted. Nordstrom argues that the overall nature of the Agreement was a loan secured by the property. According to Nordstrom, the quitclaim deed was only meant to secure repayment of the overall loan and was not intended to convey outright a one-half interest in the Property. Therefore, Nordstrom asserts, the deed should be properly interpreted as an equitable mortgage rather than a conveyance. Conversely, Kenneth Welton argues that the Agreement should be interpreted as containing two distinct phases. The first phase contemplated an immediate loan of $33,000, which was evidenced by the LaSha Note and Welton Note, and was secured by the Mortgage. The second phase committed the Weltons to a long-term financial obligation to pay ongoing real-estate taxes, insurance premiums, and repairs. In exchange for this long-term obligation, Michael received an undivided one-half interest in the Property. In this sense, Welton argues, the deed was not security for a loan, but simply an outright conveyance in exchange for undertaking the long-term financial obligations of the Property. We agree

5

with the district' courts determination that the quitclaim deed conveyed a one-half interest to Michael.

Where a deed absolute on its face is given as security, it constitutes an equitable mortgage. *Ministers Life & Cas. Union v. Franklin Park Towers Corp.*, 307 Minn. 134, 137, 239 N.W.2d 207, 210 (1976). An equitable mortgage exists when the borrower deeds property to the lender in exchange for a loan. *Miller v. Anderson*, 394 N.W.2d 279, 283 (Minn. App. 1986). But "a transaction will not be construed as an equitable mortgage unless both parties intended to enter into a mortgage agreement." *Id.* "In the final analysis, the question of whether the parties to a conveyance really intended it to be absolute or security for indebtedness is for the trier[] of fact." *Gagne v. Hoban*, 280 Minn. 475, 480-81, 159 N.W.2d 896, 900 (1968). The party seeking declaration of an equitable mortgage has the burden of proof. *Westberg v. Wilson*, 185 Minn. 307, 309, 241 N.W. 315, 316 (1932).

In determining whether a transaction constitutes a conveyance or an equitable mortgage, the relevant inquiry is the intent of the parties when they entered into the transaction. *Ministers*, 307 Minn. at 137-38, 239 N.W.2d at 210. "Intention is to be ascertained by the written memorials of the transaction and the attendant facts and circumstances." *Id.* at 138, 239 N.W.2d at 210. The specific language of the Agreement supports the district court's interpretation that Michael and LaSha intended to enter into a distinct, two-phased transaction consisting of (1) a $33,000 loan secured by the promissory notes and Mortgage and (2) future payment of taxes, insurance, and repairs in exchange for a one-half interest in the Property. Discussing the initial $33,000 loan,

6

paragraph 2 of the Agreement states that Michael "agrees to *loan* LaSha funds to pay off" the Hennepin County contract. (Emphasis added). In paragraph 4, the Agreement states that Michael "further agrees to *provide funds* necessary to" pay future insurance premiums and real-estate taxes. (Emphasis added). In paragraph 5 discussing repairs, the Agreement again states that Michael "agrees to *provide funds*" for LaSha. (Emphasis added). These distinctions support the interpretation that a two-phased transaction with two different approaches was intended—one phase involving a $33,000 loan secured by the Mortgage and promissory notes, and another involving the conveyance of the quitclaim deed in exchange for future payments on the Property. Moreover, the quitclaim deed itself lends further support to this interpretation. Under Minn. Stat. § 287.03 (2014), "[n]o instrument . . . may be enforced as security for any debt, unless the fact that it is so intended is expressed." No such statement appears anywhere in the quitclaim deed. And while the Minnesota Supreme Court has held that "the omission of the requirement of the revenue statute is not . . . controlling," it further commented that such an omission "is significant." *Westberg*, 185 Minn. at 310, 241 N.W. at 317.

In sum, the language in the Agreement and the attendant facts and circumstances support the district court's interpretation of the Agreement. First, Michael Welton would loan $33,000 to LaSha, which was secured by the promissory notes and the Mortgage. Second, LaSha would convey a one-half interest in the Property outright in exchange for providing future funds relating to the payment of taxes, insurance premiums, and repairs. Because these were distinct transactions, the district court did not err in determining that

7

an equitable mortgage did not exist. We therefore affirm the district court's summary-judgment award of $64,798.03 relating to Michael's one-half interest in the Property.

**II.     The district court erred by issuing a summary-judgment order contrary to the probate code.**

We next analyze the district court's summary-judgment award of $64,185.73 relating to Kenneth's $33,000 loan that was secured by the promissory notes and the Mortgage. Nordstrom argues that the district court incorrectly applied Minnesota's probate code by giving Kenneth Welton's payments priority over payments to "costs and expenses of administration," as required by Minn. Stat. § 524.3-805 (2014). Nordstrom argues that, even if Kenneth possessed a secured claim, that claim is still governed by the probate code's prioritization of payments.

Kenneth Welton had a secured claim against the Estate because his $33,000 loan was secured by the accompanying Mortgage. *See* Minn. Stat. § 524.1-201 (8), (46) (2014) (identifying "claims" as "liabilities of the decedent . . . arising in contract" and "security" as "any note . . . evidence of indebtedness . . . [or] any interest or instrument commonly known as a security"). This court has recognized that "the probate code treats secured claims differently from unsecured claims." *Somsen, Mueller, Lowther & Franta, PA v. Estates of Olsen*, 790 N.W.2d 194, 196 (Minn. App. 2010). Specifically, secured claims do not require a claim to be filed in probate at all. *See Harter v. Lenmark*, 443 N.W.2d 537, 540 (Minn. 1989). Instead, a personal representative may pay the secured creditor "whether or not the holder of the encumbrance has filed a claim." Minn. Stat. § 524.3-814 (2014) (agreeing that "by operation of statute, a mortgagee may proceed

8

against property of the estate encumbered by a mortgage without the necessity of filing a claim"). If the personal representative fails to do so, the secured creditor may commence a foreclosure by advertisement. *Somsen*, 790 N.W.2d at 197.

While the foregoing provisions provide that mortgagees are not required to file a claim in probate court, they do not provide explicit guidance when, as here, a mortgagee voluntarily chooses to file a claim in probate proceedings rather than commence a foreclosure. Appellant relies on an unpublished opinion to argue that when a secured creditor chooses to file a claim in probate court, that court must treat it the same as a claim made by an unsecured creditor.[2]

Under the probate code, if an estate's assets are insufficient to pay all creditors' claims, the personal representative shall prioritize the payment of claims by following the order outlined in Minn. Stat. § 524.3-805(a) (2014). Section 524.3-805(a) states:

> If the applicable assets of the estate are insufficient to pay all claims in full, the personal representative shall make payment in the following order:
> (1) costs and expenses of administration;
> (2) reasonable funeral expenses;
> (3) debts and taxes with preference under federal law;
> (4) reasonable and necessary medical, hospital, or nursing home expenses of the last illness of the decedent . . . ;
> (5) reasonable and necessary medical, hospital, and nursing home expenses for the care of the decedent during the year immediately preceding death;

---

[2] We recognize that unpublished cases are not precedential. *See* Minn. Stat. § 480A.08, subd. 3(c) (2014).

(6)     debts with preference under other laws of this state, and state taxes;

(7)     all other claims.

Because this list makes no distinction between secured claims and unsecured claims, all claims filed in probate proceedings, secured or unsecured, are subject to this priority. But here, the district court stated that "as a secured creditor" Kenneth is entitled to $64,185.73 and ordered that any remaining funds would only be distributed to the Estate "[a]fter payment of the required sums to Kenneth R. Welton." Because this order gave priority to Kenneth Welton's claims inconsistent with the priority provided in the probate code, "the district court erred in its application of the law." *See STAR Ctrs, Inc*., 644 N.W.2d at 76-77.

At oral argument before this court, Kenneth Welton asserted that the probate code's priority list is not at issue. Instead, Kenneth argued, the issue is really one of title. As Kenneth points out, the list of priority outlined in section 524.3-805(a) is predicated upon the following language: "If the applicable assets of the estate are insufficient to pay all claims in full, the personal representative shall make payment in the following order." Minn. Stat. § 524.3-805(a). Under this language, Kenneth argues, the first step in any probate proceeding is to determine what are the "applicable assets" of the estate. *See* Minn. Stat. § 524.3-105 (granting the probate court jurisdiction to determine title on an asset alleged to belong to an estate). Kenneth concludes that because he has a mortgage on the Property, it cannot be considered an "applicable asset" of the Estate, and is thus excluded from section 524.3-805(a). We disagree.

10

Kenneth's argument presumes that when LaSha granted a mortgage on the Property, he also transferred title of the Property to the mortgagee, Kenneth Welton. But in Minnesota, a mortgage of real property does not also convey title. *See Romanchuk v. Plotkin*, 215 Minn. 156, 161, 9 N.W.2d 421, 424 (1943) ("In Massachusetts and some other states a mortgage of real property conveys the title subject to defeasance upon payment of the mortgage debt or upon fulfillment of the conditions of the mortgage. We do not follow that rule."). Instead, "a mortgage creates a lien in favor of the mortgagee as security for his debt with right of ownership and possession in the mortgagor until foreclosure and expiration of the period of redemption." *Id*. at 161, 9 N.W.2d at 424-25. Therefore, the existence of the Mortgage does not mean that the Property was no longer an "applicable asset" of the Estate. *See id*. at 161, 9 N.W.2d at 425. (explaining that "[w]here a mortgage on real estate creates a lien, the execution of the mortgage does not effect a severance of title"). Rather, it simply created a lien in favor of Kenneth Welton as security for LaSha's debt. Since the Mortgage does not affect the title of the Property, Kenneth's argument fails.

Because of the misapplication of the probate code, the district court's order regarding the payment of $64,185.73 is reversed. We remand to the district court to determine the priority of claims in accordance with Minn. Stat. § 524.3-805(a).

11

**III.    The district court did not err by determining that the Mortgage was unambiguous and supported by consideration.**

Lastly, Nordstrom argues that summary judgment was inappropriate because the terms of the Mortgage were ambiguous and not supported by consideration.  We are not persuaded.

"A contract is ambiguous if, based upon its language alone, it is reasonably susceptible of more than one interpretation." *Art Goebel, Inc. v. N. Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn. 1997).  Nordstrom asserts that the Mortgage was ambiguous because it refers to both LaSha and Michael as "Borrower," while referring to Kenneth as the "Lender."  Nordstrom argues that LaSha cannot be a "Borrower" because he received the loan from Michael Welton, not Kenneth.  But this argument fails to explain what language in the Mortgage is "reasonably susceptible of more than one interpretation" and fails to propose what those interpretations are. *Id.*  Instead, Nordstrom simply disagrees about labeling LaSha as a "Borrower."  This is not enough to make the Mortgage ambiguous. *See Knudsen v. Transp. Leasing/Contract, Inc.*, 672 N.W.2d 221, 223 (Minn. App. 2003) ("[T]he terms of a contract . . . will not be considered ambiguous solely because the parties dispute the proper interpretation of the terms."), *review denied* (Minn. Feb. 25, 2004).  Moreover, it is entirely reasonable that both LaSha and Michael Welton, as co-owners, would appear on the Mortgage encumbering the entire Property.

The Mortgage does not lack consideration.  Consideration is "[s]omething . . . bargained for and received by a promisor from a promisee." *Black's*

12

*Law Dictionary* 347 (9th ed. 2009). "Consideration may consist of either a benefit accruing to a party or a detriment suffered by another party." *C & D Invs. v. Beaudoin*, 364 N.W.2d 850, 853 (Minn. App. 1985), *review denied* (Minn. June 14, 1985). Consideration exists when "something of value [is] given in return for performance or promise of performance." *Brooksbank v. Anderson*, 586 N.W.2d 789, 794 (Minn. App. 1998), *review denied* (Minn. Jan. 27, 1999). Here, Nordstrom argues that no consideration existed because the loan did not go to LaSha directly, but went first from Kenneth to Michael and then to LaSha. But we have held that "[c]onsideration need not pass from the promisee to the promisor to be valid," *C & D*, 364 N.W.2d at 853, and that "[i]t is well-settled that one promise may act as consideration for multiple promises," *Current Tech. Concepts, Inc. v. Irie Enters., Inc.*, 530 N.W.2d 539, 543 (Minn. 1995). LaSha received a $33,000 loan while Kenneth received a promise to repay the loan. Thus, consideration was present.

In sum, we affirm the district court's determination that Michael Welton owned one half of LaSha's property through a quitclaim deed. We reverse the district court's summary judgment award to Kenneth Welton and remand to the district court to reopen the record at its discretion to determine the priority of claims consistent with Minn. Stat. § 524.3-805(a). Finally, we affirm the district court's determination that the Mortgage was unambiguous and supported by consideration.

**Affirmed in part, reversed in part, and remanded.**